DAVID STRADER, Appellant, v. N. G. ARMSTRONG et al., Appellees.

**HUSBAND AND WIFE:** Alienation of Affections—Burden of Proof. A husband who alleges that his stepchildren alienated the affections of his wife must establish actual, intentional, and malicious alienation. Evidence held insufficient.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

FEBRUARY 7, 1922.

ACTION for damages for the alleged alienation of the affections of plaintiff's wife through a malicious conspiracy of the defendants. Upon motion of the defendants at the close of all the testimony the court directed a verdict on behalf of the defendants and entered judgment for costs against plaintiff. Plaintiff appeals.—*Affirmed.*

*Crissman & Linville,* for appellant.

*C. W. Meek, Johnson & Donnelly,* and *Redmond & Stewart,* for appellees.

DE GRAFF, J.—Plaintiff predicates his right to recover damages for the alienation of the love and affection of his wife in that the "defendants maliciously conspired and confederated together for the purpose and with the intent of alienating the affections of the wife of this plaintiff, and of estranging the peaceful and happy domestic relations theretofore existing by and between plaintiff and his said wife." Upon the conclusion of all the evidence the trial court directed a verdict in favor of the defendants and with the correctness of this ruling the appeal concerns itself.

Fact questions only are presented. At the outset it may be said that the allegation of conspiracy finds no substantial support in the record. There is no concert of action established, nor is malice proved. We will not incumber this opinion by a detailed recital of the voluminous record, but will be content to recite the primary and controlling facts.

The plaintiff David Strader was married to Sarah A. Strader, widow of Thomas Armstrong, in the year 1909 and they continued to live together until about December 21, 1918. At the time of marriage Strader was about 54 years of age and Mrs. Strader about 68 years. Mrs. Strader by her first marriage became the mother of nine children, all of whom were grown and resided separate and apart from their mother. The defendants N. G. Armstrong, Louis Armstrong and Mina Meek are her children, Christine Armstrong being the wife of N. G. Armstrong and C. W. Meek being the husband of Mina.

Strader had formerly lived in Illinois where his first wife died a few years prior to his marriage to Mrs. Strader. He also had grown children. Mrs. Strader possessed a kindly disposition, and was devoutly religious, but was a woman of positive convictions. She owned considerable property, and in the settlement of the estate of her first husband, her children had respectively agreed to pay her $300 per year during her life. Strader had very little property and was a man of limited education.

The courtship of these elderly people began in Los Angeles while Mrs. Strader was on a visit to her brother. After Strader returned to Illinois his appeals to Mrs. Armstrong were made through correspondence. These interesting epistles on his part stress three facts: (1) His piety (2) His poverty (3) Secrecy from Mrs. Armstrong's children and (4) His eternal love and devotion to her.

In the light of the subsequent record these matters are of considerable moment, and concerning these letters as one reads the later events it may be said, "He doth protest too much." The course of true love apparently ran smoothly for a while subsequently to the marriage, but the pathos of "John Anderson, my Jo, John" is not found in the poetry of their lives after a few years. The reasons are quite apparent.

Mrs. Strader entertained a strong dislike to Strader's daughter Alice, and whether rightfully or not that dislike continued to the time of her death. Alice married a nephew of Mrs. Strader in the fall of 1911 and later the new family became a part of the household of the Straders. A child was born to Alice and at the time of the open breach between the Straders this boy, then about six years old, became a contributing cause to the strained relations between the Straders.

From the time of their marriage Mr. and Mrs. Strader lived in their own simple way undisturbed and uninterfered with by any of Mrs. Strader's children. None of them ever lived with her and she saw them only upon the interchange of visits between them. In the early fall of 1918 Mrs. Strader became seriously ill and it was necessary to employ help to care for her. At this time Strader asked his daughter Alice and son-in-law Weatherwax to move into the Strader home which they did. There seems to have always existed a coldness between Strader and the children of Mrs. Strader. Her son Louis, one of the defendants herein, after his discharge from the Canadian army and upon learning of his mother's sickness came to visit her. He was the youngest son and she manifested a very strong affection for him. The atmosphere, however, was decidedly chilled by the conduct and language of Strader and his daughter's family toward Louis. This caused some resentment on the part of Mrs. Strader and tended to intensify the situation.

During this sickness there was some talk on the part of Strader about her boys' looking after her business. It is shown, however, that no child of hers ever asked about her money or interfered with her business or her home relations. She had the reputation of being a close and careful business woman. Strader had earned practically nothing during this period although he apparently was quite attentive to Mrs. Strader and from outward appearances they were getting along fairly well.

About this time it was realized that Mrs. Strader, due to her advanced age, would not recover from her sickness and upon the request of Mrs. Strader and with a more or less reluctant consent on the part of Strader it was determined that her son N. G. Armstrong should be appointed as trustee to look after her business affairs. A trust agreement was drawn by C. W.

Meek, an attorney in Cedar Rapids, and it was signed. On the evening that the agreement was brought to the Strader home for signatures there were present Mr. and Mrs. Strader, his daughter Alice Weatherwax, a nurse Mrs. Starbuck, Mrs. Strader's daughter Mrs. Schlotterback, and her son N. G. Armstrong. Alice prepared the evening meal but did not remain in the home. She and her father had a conference upstairs, and it appears that after Alice left the house she hurried to the Security Savings Bank where a deposit box had been rented jointly in her and her father's name. She then went to the Cedar Rapids Savings Bank where she rented another deposit box in her own name and placed therein certain bundles of cash and papers. The cash aggregated over $3,500. Unknown to her she had been followed by reason of the suspicious circumstances in the Strader home. This matter became known to the family and Strader himself was acquainted with the fact that it was known. His own remark on the evening in question indicated the workings of a guilty conscience. He said:

"Now mother, whatever you do, tell them I have always been good to you."

It is the claim of the defendants that some $6,000 or $7,000 of Mrs. Strader's moneys were missing and unaccounted for in less than two years prior to the date of this evening meal. Later an action in court for an accounting was instituted by the trustee under the trust agreement against Strader, and the testimony elicited upon this trial served to break the last bond between this aged couple and on her own initiative she left him and went to stay temporarily with her daughter Mrs. Meek.

Later when Mrs. Strader was fully convinced that he had cheated and defrauded her, and had circulated uncomplimentary stories about some of her children, her love for him vanished and she decided and did institute an action for a divorce. By reason of her death the divorce action was abated.

If we single out each of the defendants to discover from this record the evidence which tends to connect him or her as a moving cause for the alienation of the affections of Mrs. Strader for her husband it will be found wanting. The name Christine Armstrong is wholly isolated from the events narrated, and no witness connects her with anything said or done that is the

proximate cause of the alleged damage. The same is true as to Louis Armstrong. Not a line of testimony tends to prove that Mina Meek encouraged her mother to remain away from Strader, but she did advise her mother not to get a divorce. Mrs. Meek was a mother of a large family and was in delicate health. Her mother's presence in the Meek home required her time and energy, and she would have been pleased had there been any other sensible solution of the problem and have her mother reside elsewhere. She did what any devoted daughter would do under the circumstances.

N. G. Armstrong acted upon the request of the real parties in interest, and the defendant Meek being a competent and reputable lawyer living in the same city was asked to draft the trust agreement. It may have saved a little embarrassment to both of these men had a lawyer outside the family been selected, but we see no reason to criticize the action taken. It was believed by the children, who were in closest touch with the situation and with good reason, that Strader was quietly and deceitfully taking the mother's money, and a sense of filial duty induced them to give their mother such aid as was in their power.

It is clearly shown that Mrs. Strader's attitude and disposition towards Strader was not the result of anything said or done by the defendants by concert of action or otherwise, but this feeling on her part finds its origin in her discovery that he was untruthful, that he had deceived her and that he was unkind to her children. This is her testimony given in conversation with her own pastor and with attorney Redmond who desired to know the very truth of the matter before consenting to act on her behalf.

The motives of a child are presumed to be good until the contrary is made to appear, and the burden of proof is upon the plaintiff to show not only actual alienation of the affections but that this was caused by the interference of the children acting intentionally and maliciously. *Heisler v. Heisler*, 151 Iowa 503; *Pooley v. Dutton*, 165 Iowa 745; *McGregor v. McGregor*, (Ky.) 115 S. W. 802; *Geromini v. Brunelli*, 46 L. R. A. (N. S.) 465.

The only question presented by this appeal is the sufficiency of the testimony to take the case to the jury. Had a verdict been returned for plaintiff, the trial court would have been

justified in setting the same aside on this record.  The scintilla doctrine has been repudiated.  *McGlade v. City of Waterloo,* 178 Iowa 11.  There is nothing in the testimony before us from which a jury could reasonably find that the defendants were acting in bad faith or were doing things maliciously to accomplish the separation of this elderly couple.  The law is tender of parental relationship.  These defendants were not dominant personages in the life or business affairs of Mrs. Strader. Children naturally have extreme solicitude for the welfare of the parent, especially the mother, and their good faith is not to be impeached by mere advice given.  See *Busenbark v. Busenbark,* 150 Iowa 7.

The trial court was justified in holding that plaintiff's conduct when truthfully brought home to the knowledge of his wife was the proximate cause of the estrangement of the wife from him, and that the defendant children did nothing but what is sanctioned and sanctified by the relationship of parent and child and by natural justice.  The judgment entered by the trial court is therefore—*Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.