IOWA STATE BANK OF HULL, Appellant, v. WILLIAM RONS et al., Appellees.

**ESTOPPEL:** Equitable Estoppel—Silence. The holder of a note and
1    mortgage as collateral, who stands by, and even encourages and assists the maker and payee of the note to execute a rescission of the transaction out of which the note and mortgage arose, may not thereafter assert against the maker his right as a collateral holder, the said maker being ignorant that the said obligations were being so held as collateral.

**RECEIVERS:** Appointment—Naked Statutory Authority. The court
2    will not, in mortgage foreclosure proceedings, appoint a receiver (1) when the mortgage neither provides for such receiver nor pledges the rents, and (2) when there is no showing of waste, or of impairment or destruction of the security actually pledged.

Headnote 1: 21 C. J. p. 1152.   Headnote 2:   27 Cyc. p. 1623.

Headnote 1: 10 R. C. L. 692.   Headnote 2:   26 A. L. R. 66; 19 R. C. L. 560.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON and C. C. BRADLEY, Judges.

FEBRUARY 15, 1927.

An action in equity, to foreclose a real estate mortgage held as collateral security, and to obtain the appointment of a receiver to collect rents. The answer to the petition pleads an

estoppel against the foreclosure and assignment of rents before the appointment of the receiver. From a decree dismissing plaintiff's petition against Rons and wife, plaintiff appeals.— *Modified and affirmed.*

*Van Oosterhout & Kolyn,* for appellant.

*Hatley & Van de Steeg,* for William Rons, Effie Rons, Heimen Hymans, Henry Hymans, and Rose Hymans, appellees.

*Klay & Klay,* for other appellees.

ALBERT, J.—Henry Hymans was the owner of the land involved herein, subject to a mortgage of $31,000. He conveyed this land on March 1, 1920, to William Rons. Aside from the cash payment, Rons and his wife on that day

1. ESTOPPEL: equitable estoppel: silence.

executed a mortgage on this land for $26,000. Hymans had some contracts out on this land to other parties, which, so far as the principal question in controversy herein is concerned, are not material.

Through a loss in feeding cattle, Hymans and other parties became indebted to appellant bank in a large amount, and to secure the bank, he put up as collateral this $26,000 mortgage and its accompanying note, and made a written assignment of the mortgage to the bank. This assignment, which was dated February 24, 1922, was not placed of record by the bank until a time subsequent to all of the matters which give rise to this controversy. The parties to whom Rons contracted to sell were unable to carry out their contract, and Rons, who was having financial troubles, took the matter up with Hymans, the former vendor, in the fall of 1921, looking to some arrangement by which Rons could be relieved from his liability under this mortgage and note. Rons and Hymans at different times had talked this matter over with the president of appellant bank, one Reimann by name. These negotiations resulted in an agreement between Rons and Hymans in the latter part of February, 1922, by which Rons was to pay Hymans $1,500 in cash, and deed the land back to Hymans, and Rons was to be relieved of his liability under this $26,000 mortgage and note. Before this agreement was finally consummated, the general outline of it was talked over by both Rons and Hymans with Reimann, president

of the bank, but at different times, and Reimann advised Hymans to go ahead and close the deal with Rons. At the time in question, they went to appellant bank, and Reimann, the president, and Mayer, cashier, were both present in the bank at the time. After these officers were advised of their proposed settlement, a deed was drawn by the president or cashier, conveying this property from Rons and wife to Hymans, and at the same time a release was executed for this $26,000 mortgage. Both of these officers of the bank at the time knew that the bank held the $26,000 mortgage as collateral, and both knew that the arrangement made between Rons and Hymans was being carried out. The only thing said by any person at this time about the $26,000 mortgage was, as testified to by Rons, and corroborated by Hymans, and not denied by Reimann, that Rons said to Reimann that he wanted to be released from the whole transaction, and further, "I said my name should come off the note." And Reimann said:

"Bill, Henry cannot do that, because, if you will take your name off, it will release the other fellows; and they are going through with it, and you are released as it is."

Reimann testified that, at the time he drew the deed from Rons to Hymans, he knew that the bank was holder of the $26,000 mortgage as collateral, but he said nothing whatever about the bank's holding the same, but that he "knew down deep in his heart that he would ask Billie Rons to pay it." When the deed and release above referred to were executed and delivered, Rons paid Hymans $1,700 in cash. Rons did not know, prior to the completion of this transaction, that Hymans had ever put the $26,000 mortgage and note up with the bank as collateral, and he never discovered such condition until some three years after the deal was made with Hymans.

This is not a full statement of the record in this case, but rather a general statement of the high points therein.

It is claimed by Rons and wife that, under this record, the bank is estopped to ask judgment and foreclosure of said $26,000 mortgage and note, as against them. The district court so held, and so holds this court.

In *McPherson v. Berry*, 92 Iowa 64, at page 70, we laid down the general rule governing estoppels of this character, as follows:

" 'If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent.' "

In *Miles v. Lefi*, 60 Iowa 168, 170, it is said:

"The silence of the defendant, and not only that, but his acts and declarations, were such as to induce strangers to believe that he had no claim upon the property. He cannot afterwards assert that he had such claim when the plaintiff made his purchase. And it can make no difference by what right he claims, whether as prior mortgagee or purchaser at an execution sale to which the plaintiff is a stranger."

In *Howard v. McMillen*, 101 Iowa 453, at page 457, this court said:

"It is the general rule that the mere silence of a person in regard to facts which it is not his duty to disclose is not fraudulent. * * * But, where silence would be misleading, a duty to speak may arise. A person may, under some circumstances, by passive conduct or silence, knowingly and intentionally deceive and mislead another, and thus perpetrate a fraud."

In *Barnes v. Century Sav. Bank*, 165 Iowa 141, at page 171, the court said:

"In making the loan, and in all matters properly referable thereto, including the representations made to the guarantor, Schussler, the cashier was acting for the bank; and if he undertook to state Barnes' liabilities, it was his duty to do so correctly; and, if he failed in this, his act was the act of the bank, on the theory that, where one of two innocent parties must suffer from the wrongs of a third person, he who placed the wrongdoer in a position to do the wrong must suffer the consequences of his act."

"Equity also imposes a higher duty than law with regard to the disclosure of matters of which one party is ignorant. * * * Fraud in equity includes all acts, omissions, and concealments which involve a breach of either legal or equitable duty, trust, or confidence, justly reposed." *Dickinson v. Stevenson*, 142 Iowa 567, 570.

In *Helwig v. Fogelsong*, 166 Iowa 715, at page 723, this court said:

"Where a party knowingly, though it be done passively by looking on, suffers another to purchase land under an erroneous

opinion of title, without making known his own claim, he will not afterwards be permitted to exercise his legal rights against such person.  *  *  *  A party who has taken one position by which he expects to be benefited is estopped from repudiating that and taking another inconsistent position to the prejudice of another.''

In *Rorem v. Pederson*, 199 Iowa 304, it is said:

''It has been frequently held, in substance and fact, that it was not necessary that the false representations should be the sole inducement to enter into a contract; and that it is sufficient to show that they were relied upon to some extent, and but for them the contract or deal would not have been made.''

In *Browning v. Kannow*, 202 Iowa 465, this court said:

''Estoppel may arise from a failure to speak or assert rights on the part of one when he knows, or has reasonable ground to believe, that another is about to act in reliance on his omission.''

This is a general review of the law of estoppel reflected in our former opinions. As it is applied to this case, this bank, through its officers, knew that they were the holder of this mortgage and note as collateral. They knew that Rons was making arrangements with Hymans by which the land covered by the mortgage was to be conveyed back to Hymans, and Rons was to pay Hymans $1,700, in addition to making a deed to him for the land, and was to be released from the $26,000 mortgage then held by the bank. While the burden of proof is on the party claiming an estoppel, to prove the same by clear and satisfactory evidence, there is also a burden borne by the bank in this case, and that is, to avoid the effect of this estoppel. The situation might be such that there was no duty on them to speak. While it is true that, in some instances, it has been held that mere silence alone is not sufficient ground on which to base an estoppel, yet, under our holdings, it is a recognized rule that one cannot stand by, with a knowledge of all the facts, and permit another, who it is shown was not familiar with all the facts, to act to the latter's prejudice or harm, and afterwards assert right and claims on his part which, if asserted at the proper time, would have protected the other party. In other words, when the bank, through its officers, knew that Rons and Hymans were dealing for a return of this land and a release of the mortgage, it was then the duty of the bank holding the mortgage to speak,

and advise Rons, who, from the facts in the case and the testimony, did not know that the bank held the mortgage; and, having advised the parties to proceed with this deal on terms which were perfectly familiar to the bank officers, it is too late, after the deal is completed, for the bank to then assert that it was and is the holder of this mortgage and note, and to recover on the same against Rons. In good conscience and equity, the bank should have advised Rons of their holding of said mortgage, and, since they failed to do so, good conscience and equity will not allow them to afterwards make the claim which they are making in this case.

They seek, however, to avoid the force and effect of this rule by claiming that Rons knew, at the time the deal was made betwixt him and Hymans, that the bank held this mortgage and note, or knew such facts as would put a prudent man on inquiry. A review of all of the evidence in the case quite satisfies us that Rons had no such knowledge. We are satisfied with the ruling of the district court on this question.

A dispute arises over some rental notes given, which found their way into Hymans' hands; but, as we view the case, the contention over these rental notes is not material.

A reading of the mortgage in this case shows that the rents, incomes, and profits of this land are not pledged as security for the debt, neither is there any provision in the mortgage for a receiver. This being true, if there is any power in the court to appoint a receiver, it must be under the general statute (Section 12713, Code of 1924). The petition in the case and the evidence adduced thereunder do not, in our judgment, warrant the appointment of a receiver herein. Little more need be said than to refer to the following from the case of *Young v. Stewart*, 201 Iowa 301, 304:

2. RECEIVERS: appointment: naked statutory authority.

"It is true that, under the plenary power vested in a court of equity, and under the statute, a situation might arise where a court could properly appoint a receiver to take charge of the mortgaged premises upon the commencement of the suit of foreclosure, even though the rents and profits were not pledged and there was no stipulation for the appointment of a receiver. Such power is conferred by the statute (Section 12713), and is within the plenary power of a court of equity; but such power could only be exercised in a foreclosure case where there was an

ample and sufficient showing that the security—to wit, the real estate covered by the mortgage—was inadequate security for the debt; that the mortgagor was insolvent; and that the security itself would be impaired or would suffer waste or deterioration unless a receiver was appointed. The power to appoint the receiver in such a case, where nothing but the real estate itself is pledged, is not a power to add to the security of the mortgagee by giving him, through the instrumentality of a receiver, rents and profits, or possession of the real estate, or anything more than the security granted him by his mortgage. The appointment of a receiver in such a case can only be justified where it clearly appears to the chancellor that a receiver is necessary, to *preserve* the security. But a mortgagee cannot, through the instrumentality of a receiver, *enhance* the security by the appropriation to the payment of the mortgage debt of property not embraced within the terms of the mortgage. No such exigency appears in this case as would justify the appointment of a receiver to take possession of the mortgaged premises, in order to save the real estate and its appurtenances intact and prevent material waste, impairment, or destruction of the security actually pledged under the mortgage. Furthermore, the mortgagor had an absolute right to dispose of the rents and profits, without being liable to account therefor to the mortgagee in any way. *Whiteside v. Morris,* supra [197 Iowa 211], and cases cited therein.''

There is nothing in the case at bar that shows any waste, impairment, or destruction of the actual security pledged under this mortgage. The court should not have appointed a receiver. The decree of the district court will be modified accordingly.— *Modified and affirmed.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.