HARRY FOREMAN et al., Appellants, v. ANNA DUGAN, Administratrix, Appellee.

APRIL 3, 1928.

*Fred F. Keithley*, for appellants.

*John McLennan* and *Stipp, Perry, Bannister & Starzinger*, for appellee.

FAVILLE, J.—The appellants are husband and wife. The appellee is the administratrix of the estate of the vendor of the real estate involved in this suit, the original action being brought against said vendor, one Howard. On or about the 4th day of September, 1920, the appellants entered into a written contract with said Howard and his wife for the purchase of an 80-acre tract of land in Polk County, the agreed price being $400 an acre. $4,000 of the purchase price was paid by the conveyance of certain property of the appellants', situated in the city of Des Moines. Of the remaining purchase price the appellant paid $4,000 in cash. Appellants took possession of the premises in the spring following the purchase, and during that year made improvements on the premises. In August of said year (1921), there was a very heavy downfall of rain, and a drainage ditch which extended along the east side of the land overflowed, the water breaking through the embankments on the sides of the ditch, and overflowing part of the farm, causing great damage to appellants' crops. In the fore part of 1923, the contract of purchase was forfeited for nonpayment of amounts due thereunder, and the vendor resumed possession of the premises. Shortly thereafter, this action for damages was brought. The court having directed a verdict in favor of the appellee, under the familiar and well established rule we must review the evidence in the case in the light most favorable to the appellant. With this thought in mind, we have read this record with great care. We shall not, however, attempt to set out the evidence in minute detail, but to review only the more salient facts. The land in question lies a short distance north of the city of Des Moines. It is what is called second bottom land. The appellant had been engaged in farming for about ten years prior to the transaction in question. In the early fall of 1920, he went with a real estate man, by the name of Flannery, to inspect a farm

north of Des Moines. He was not satisfied with the farm shown him, but on the trip observed the farm in question, and then went with Flannery to the place, and personally inspected the farm. He went over various parts of the farm, talked with Howard and his wife in regard to the price, made a cash payment of $1,000 by check that day, and later entered into the contract for the purchase of the premises, and took possession the succeeding spring. The evidence shows that the farm is largely composed of low land, part lying adjacent to the Des Moines River. To the east of the farm the land is hilly, and the water from the hills passes along the east side of the farm in a drainage ditch which was constructed by the county. The real fighting ground of this lawsuit is with regard to what was said at the time that the appellant purchased the farm. The vendor, Howard, being dead, the appellant is an incompetent witness, under Section 11257, Code of 1924, as to the transaction between the parties. The real estate agent, Flannery, however, testified in regard to the conversation between the appellant and Howard before the contract was drawn. He testified as follows:

"Q. In the conversation between Mr. Foreman and Mr. Howard before the contract was drawn, did you hear any question put by Mr. Foreman as to whether or not the land overflowed? A. Yes; he asked him if the farm overflowed, and he told him it did; it had overflowed from the river in time past, from the gorges,—ice gorge backed up in the Wisconsin River. Mr. Bannister: In the Wisconsin River? A. Or the Des Moines River,—not the Wisconsin River. I beg your pardon. I am from Wisconsin. The Des Moines River. Q. Was anything said at that time about the ditch, overflowing? A. No, sir, not that I remember. Not a thing. Q. Was there anything said about how often that land had overflowed from the river? A. Not very much. I don't think it was discussed very much. He said it had overflowed in the past a few times from the river. I don't think it was mentioned, the number of times, at all."

The only other witness with regard to this conversation was the wife of the vendor, who, referring to the conversation between her husband and the appellant, testified:

"He wanted to know if the river ever overflowed it. Mr. Howard said, 'Well, if there was a big ice gorge, it might back up on it.' Q. Was there anything said about the ditch? Did

he ask anything about the ditch,—whether that had ever broken the banks? A. No, he never said a word about the ditch. Q. Was what he asked you, whether the river ever overflowed the land? A. That is all, yes. Q. Mr. Howard told him it had occasionally? A. He said, 'If there should come an ice gorge, it would back up.' Q. Was there any conversation there between anybody about the ditch or whether you had any trouble with the ditch? A. Not a word. Q. Was the ditch mentioned? A. No. Q. After that conversation, was there anything—what was said? A. Nothing. He said he would pay down a thousand dollars.''

The evidence with regard to the overflowing of the land is somewhat in conflict, but there is evidence tending to show that, prior to the time of the sale of the premises, the water in the ditch had overflowed from the ditch and broken through the banks, at least upon one occasion. It appeared that the ditch was constructed in 1905. Much of the evidence is directed to the conditions in the summer of 1921, when appellant was in possession of the farm; and it appears that there was a very heavy rainfall during the summer, and that the water broke through the levee of the ditch and flooded the land. One witness, who lived on an adjoining farm, testified:

''In the six years I lived there, that was the only storm heavy enough that the water broke over the banks of the ditch.''

Another witness, who had lived near the place for five years, testified:

''I never seen this land overflow, only that year when the levee broke out after Mr. Foreman got it.''

Another witness, who had lived in the vicinity since 1909, testified:

''I have seen this ditch broke out before in that farm a number of times.''

Another witness, who had lived in the neighborhood about fifteen years, testified:

''I saw the levee along the ditch washed out before Mr. Foreman occupied that place, once, away at the south end. I don't remember when that was.''

Another witness testified:

''I have seen water overflow that ditch since it was constructed, in 1905. I could not say as to the number of times.

Yes, more than twice. I would not say whether I have more than three times or not."

He later testified that one of the times was when appellant lived on the farm. Another witness testified:

"I never saw it overflow but two times. The first time, there was a lot of trash collected on the south end, and it broke through. The other was when Mr. Foreman was on the farm."

A witness for the appellee, who had lived in the neighborhood six years, testified that the only time the water broke through the levee was while appellant was in possession. The evidence in behalf of the appellee tends to show that an obstruction by a post, fence, and debris, had at one time been in the ditch, and that this had caused the ditch to overflow. There was other evidence of appellee's, tending to show that the only time the water had broken through the banks of the ditch was after the sale to the appellant, and one time, years prior thereto, when the above-mentioned obstruction occurred.

Upon the foregoing record, the question is whether or not there was evidence of false and fraudulent representations on the part of the vendor, sufficient to carry the case to the jury. Appellant is forced, under the record, to rest his contention at this point upon the testimony of the real estate agent, Flannery, which we have set out above, and this testimony narrows down to this statement:

"He [appellant] asked him [Howard] if the farm overflowed, and he told him it did; it had overflowed from the river in time past, from the gorges,—ice gorge backed up in the river. Q. Was anything said at that time about the ditch, overflowing? A. No, sir, not that I remember. Not a thing."

Upon this entire record, we are disposed to acquiesce in the conclusion of the trial court that there was not sufficient evidence of false and fraudulent representations on the part of the vendor to carry the case to the jury, or to support a finding of fraud and false representations. It is undoubtedly a correct rule of law that one who is called upon to speak in regard to a subject-matter may be guilty of false representation by evasion, or by speaking half the truth, or failing to speak fully and truthfully where a duty rests upon him to so speak. In other words, one may be guilty, under certain circumstances, of false representations in failing to disclose facts within his knowledge.

Silence on a subject may constitute, under certain circumstances, a false representation, quite as much as spoken words. *Howard v. McMillen*, 101 Iowa 453; *Noble v. Renner*, 177 Iowa 509. But, on the other hand, in determining whether there are actionable false and fraudulent representations, consideration must be given to the situation of the parties, the matters with which they are dealing, and the subject-matter in hand. We have here a situation where the topography of the farm and its physical features were perfectly apparent to the appellant, who made a personal examination of the same at the time. He could see the lay of the land. The adjacent river, the near-by hills, and the drainage ditch, were all apparent, visible, and known to him. The minds of the parties, under all of the circumstances surrounding them at the time, were obviously directed to the question of the overflowing of the land from the adjacent river, next to which the lower land of the farm lay. We must construe the representations in the light of the circumstances under which the parties were placed at the time. Under all of the testimony, the ditch was not referred to by either party, and evidently was not in the mind of either party during the conversation. The appellant made no specific inquiry in regard to the ditch, and was truthfully informed by the vendor with regard to the overflow from the river. Under the record in this case, the appellant did not make a case to go to the jury, without proof of a false representation knowingly made by the vendor, by express words or failure to speak when required to do so, with regard to a material matter. The fact that, several years previously, the ditch had become clogged by obstructions, and the water therein had broken through the levee, and had to some extent overflowed the farm, even if the jury should so find, would, under all the facts of this case, be insufficient to support a recovery in behalf of the appellant on the ground of false and fraudulent representations on the part of the vendor. The record tends to show that the ditch had been obstructed, and that such obstruction was the cause of a previous break in the levee, some years before. There is also evidence tending to show that the ditch was afterwards cleaned out. Under this entire record, we do not think a jury would be warranted in finding that the vendor, Howard, falsely and fraudulently withheld from the appellant the knowledge that there had been such a previous overflow from the

clogged ditch, assuming such to have been the fact. Appellant's inquiry did not call for such a statement, and it obviously was not in the mind of Howard. There was evidently no purpose or intent upon the part of the vendor, Howard, to deceive the appellant with regard to the conditions of the farm, and there were no false and fraudulent representations in respect thereto that could be made the basis for a recovery, or that would sustain the verdict of a jury in behalf of the appellant. Appellant examined the farm, and saw its physical features, and advised himself fully, from his own inspection, in regard to its condition. His inquiry respecting the matter of overflow was obviously directed to the conditions surrounding the low land next to the river, and he received a truthful and correct answer in regard thereto. It cannot be assumed that the vendor, Howard, had the ditch in mind at the time, any more than it can be assumed that the appellant had it in mind; and the mere fact that the ditch had been obstructed at a time in years gone by, and because thereof had broken through the levee, and had been subsequently repaired, and had functioned for many years, cannot be presumed to have been in the mind of the vendor, so that his failure to disclose the same amounted to such a false and fraudulent representation as to be the basis of recovery in this action.

In *McGlade v. City of Waterloo,* 178 Iowa 11, we said:

"We have repudiated the scintilla doctrine, and announced the rule that a trial judge should sustain a motion to direct whenever, considering all of the testimony, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party upon whom the burden of proof rests."

See, also, *Strader v. Armstrong,* 192 Iowa 1368.

We think the trial court was correct in directing a verdict in behalf of the defendant, and the judgment is—*Affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.