ERICH WEYER, Appellee, v. CARL VOLLBRECHT, Appellant.

No. 39286.

April 2, 1929.

Rehearing Denied June 24, 1929.

*Arben L. Young* and *Sager & Sweet,* for appellant.

*Wilson & Worthen* and *Leonard M. Weiss,* for appellee.

Stevens, J.—I. Erich Weyer, appellee herein, and Anna, his wife, were married in Germany, January 26, 1923, and on January 4th of the following year, arrived, with their infant  child and Carl Muehling, a brother of Mrs. Weyer's, at the home of appellant and his father and mother, Mr. and Mrs. Wilhelm Vollbrecht, codefendants, about 12 miles from Waverly, in Bremer County. The expenses of their journey, including passage, amounting to $431, were advanced by appellant, who also entered into an obligation to the United States government to maintain the new arrivals and prevent them from becoming public charges. Employment was soon secured by appellant for appellee upon a near-by farm, where he worked for about nine months; and during this time, his wife and her brother remained at the Vollbrecht home, and, except when the weather was inclement, appellee stayed nights with his wife. During this period, suspicion and jealousy crept in, resulting finally in the permanent separation of appellee and his wife, and the institution, on October 26, 1926, of this action for damages. The cause was tried to a jury; and at the conclusion of appellee's case, and again at the close of all of the testimony, all defendants moved for a directed verdict, upon the ground of the insufficiency of the evidence to sustain a verdict against them. The motions were overruled, the cause submitted to a jury, and a joint verdict returned in favor of the plaintiff for $4,684.10. Up-

on motion for a new trial, the verdict was set aside as to his parents, and judgment entered against Carl Vollbrecht for the amount stated.

Appellant's mother and Mrs. Weyer's grandmother were sisters. While appellee was not steadily employed, so far as the record shows, he was industrious, and worked when and wherever he could secure employment. Appellant is about 42 years of age, and a bachelor. During 1924, Mrs. Weyer did housework and rendered other services for the Vollbrechts, and thereafter received compensation at the rate of $20 per month.

The conduct of appellant is not easy to explain. There is little in the record to indicate that he and Mrs. Weyer manifested affection for each other, and their association was confined largely to the home in which his parents and, for a time, a sister resided. Mrs. Weyer gave birth to a child in July, 1924. Appellee testified that, upon an occasion in 1924, he returned to his wife's bedroom early in the morning, and found her sleeping, and appellant standing by her bedside; that, on another occasion, when they all returned from a fair, his wife left the bedroom and went to the milk house, ostensibly to procure milk for one of the children; that she remained outside 15 or 20 minutes; that he went in search of her, and saw her come hurriedly out of the milk house; and that later, appellant also came out. The explanation offered by the latter of these incidents, which are not denied, was, in substance, as follows: On the first occasion referred to, he testified that he had gone into Mrs. Weyer's room to hang the clothes he had worn the day previous in a closet, and denied that he stopped or stood by Mrs. Weyer's bedside.

Testifying concerning the other incident, which was also admitted, he said that his sister had done the chores, including the milking, but that the milk had not been separated; that he went to the milk house to separate the milk, and while he was there, Mrs. Weyer came in, to get some milk; that they visited a few minutes, talking about the fair; and that she was still in the milk house when appellee came from the house.

Appellee further testified, in reference to this incident, that he remonstrated with his wife, after she returned to the bedroom, and that she then told him she no longer loved him.

Upon another occasion, appellee, with some other parties, went to the Vollbrecht home, to induce his wife to go away with

him. At that time, he was working at some distance from appellant's, and did not often see her. This was November 25, 1924. On this occasion, appellant refused to permit Mrs. Weyer to leave. Appellee's version of what occurred is as follows:

"It was against the side of the house that the conversation took place with my wife. The Vollbrechts were at home at the time, but were not there, so that they could not hear what I said to my wife in that moment. I didn't go in the house just then and see Vollbrechts, but Carl Vollbrecht came out while I was talking with my wife. I told my wife about this place that I had to work, and where we could live, while Carl was with us, and asked my wife if she wanted to go there with me, and she said 'Yes.' She then went into the house, and I went with her. Carl Vollbrecht came on the porch. I again asked my wife, 'Do you want to come along with me?' and she said 'Yes.' At that time, I had hold of her left hand, and Carl Vollbrecht took hold of her, and said, 'You are not going away; you are going to stay here with me,' and he held onto her. He took hold of her and put his arms around her and held onto her, and said that she was going to stay there with him. My wife cried. She didn't fight herself out of his arms and get away from him."

Appellee twice induced his wife to leave appellant's home and live with him, but she remained only for a few days. During the time they lived together in rented houses, appellant took household goods and provisions to them, and appears to have treated them kindly. Appellee also testified that appellant and his wife occasionally went riding in his automobile. Appellant denies that he has ever had or manifested affection for Mrs. Weyer, or that their relations have been improper. His explanation of his refusal to permit Mrs. Weyer to go with her husband on the occasion referred to is not a very satisfactory one. No doubt appellant felt that the money advanced by him for the passage of appellee and those accompanying him from Germany should be repaid, and that appellee owed him some duty on account of the obligation assumed to the government. Appellee paid $100 in money, and was given credit for $15 for work on the amount he was owing appellant. The balance due was set up as a counterclaim in this action.

We have not attempted, nor is it necessary, to set out in de-

tail all of the evidence bearing on the relations of the several parties to this litigation. So far as the evidence shows, appellee and his wife possessed affection for each other when they arrived in America, and the record contains little tending to fix blame upon him for what followed. One or two witnesses testified that, upon one occasion, appellee became very angry at his wife, and put his fist in her face. The altercation arose over a letter Mrs. Weyer found in appellee's suitcase. The letter was written to someone in Germany, but its contents are not disclosed. The evidence was, we think, clearly sufficient to justify the submission of the issues to the jury. The burden of proving the alleged alienation of his wife's affections rested upon appellee. Something occurred that completely alienated her from him. During substantially all of the time since her arrival in America, she has been an inmate of appellant's home. Although present at the time of the trial, Mrs. Weyer did not testify as a witness.

Appellant seeks to invoke the rule in his behalf applied in cases of this character where the parties charged with the alienation of the wife's affections are her parents. The relationship between appellant and Mrs. Weyer was distant, and the reasons which support the familiar rule are wholly absent. Discussion of this point is not necessary. The cases cited in appellant's behalf do not sustain the contention. *Heisler v. Heisler,* 151 Iowa 503; *Miller v. Miller,* 154 Iowa 344; *Pooley v. Dutton,* 165 Iowa 745; *Strader v. Armstrong,* 192 Iowa 1368.

II. The correctness of Paragraph 4 of the court's charge to the jury is challenged in argument; but, as no exception appears to have been taken thereto, the complaint cannot be considered.

Complaint is also made of Paragraph 5. This instruction is as follows:

"You are instructed that the ultimate question for your determination in this case is: 'Did the defendants, or any one of them, alienate from plaintiff his wife's affections?' In this connection you are told that the law presumes that the wife had affection for her husband, and that it would rest on the defendants to prove by the evidence that plaintiff's wife did not have affection for the plaintiff at the time in question."

The complaint lodged against the foregoing instruction is that it wrongfully places the burden upon appellant of proving

that appellee had lost the affections of his wife, and that it re-  lieved him of the burden of establishing one of the principal elements of his case. The court in the preceding instruction fully and completely instructed the jury as to the burden of proof. It was incumbent upon appellee to prove the charge made against appellant that he had alienated the affections of Mrs. Weyer. Instruction No. 5 was intended to go no further than to advise the jury that the law presumes that a wife has affection for her husband. Such is the law in this and other jurisdictions. *Bailey v. Bailey*, 94 Iowa 598; *Sexton v. Sexton*, 129 Iowa 487; *Lupton v. Underwood*, 3 Boyce (Del.) 519 (85 Atl. 965); *Gregg v. Gregg*, 37 Ind. App. 210 (75 N. E. 674); *Beach v. Brown*, 20 Wash. 266 (55 Pac. 46); *Albright v. McTighe*, 49 Fed. 817. There is, when thus interpreted, no inconsistency between this instruction and the preceding one, which placed the burden of proof as to all essential elements upon appellee. No issue alleging that the affections of appellee's wife were alienated by his own acts or conduct was tendered. This the instruction complained of recognizes by the use of the word "would" in the instruction. Taken as a whole, we think the instructions clearly submitted the issues to the jury.

III. As heretofore stated, the court sustained the motion of appellant's parents for a new trial, and dismissed the action against them. Complaint is made of this ruling because the motion was not sustained as to all of the defendants.

Appellee's cause of action was not based upon a conspiracy, but his petition merely charged that the alienation of the wife's affections resulted from the joint and several acts and conduct of  all of the defendants. The court correctly instructed the jury that it was not bound to return a verdict against all of the defendants or find for the plaintiff, but that a verdict might be returned against them severally or jointly, as the evidence warranted. The rule thus announced is in harmony with the repeated holdings of this court. *Dickson v. Yates*, 194 Iowa 910; *Dickson v. Young*, 202 Iowa 378.

It may be conceded that the motion to direct a verdict in favor of Wilhelm Vollbrecht and his wife, made at the close of plaintiff's case, should have been sustained. The liability of the

defendants, if any, may, however, have been either joint or several. The case was tried and submitted to the jury upon that theory. The amount of damages to be awarded by the jury depended in no sense upon whether the alienation of the wife's affections was brought about by the joint action of all of the defendants or by appellant alone. The court, in such circumstances, might grant a new trial for some, and deny it as to others of the defendants. The authorities are not numerous on this point, but this rule was early established in this state. *Terpenning v. Gallup*, 8. Iowa (Cole) 74. See, also, *Sparrow v. Bromage*, 83 Conn. 27 (74 Atl. 1070, 27 L. R. A. [N. S.] 209).

One further proposition on this point requires consideration. Certain testimony of conversations between Wilhelm Vollbrecht and Mrs. Weyer was received. Appellant was not present, and  this testimony was not, in absence of proof of a conspiracy, admissible against him. The point urged is that the testimony may have been given weight by the jury as against appellant, and was, therefore, prejudicial. The trouble with the contention of counsel is that the evidence was admitted without objection, and no request was made for an instruction limiting its effect, in the event the jury found against the alleged conspiracy, to the party making the statements. The court did instruct the jury as to the joint and several liability of the defendants. The record does not permit review of this alleged error.

Other testimony that was not admissible as against appellant is referred to by counsel in argument, some of which was rather favorable to him, and the rest could not have been prejudicial.

IV. The court admitted two letters written by Mrs. Weyer to her mother and other relatives residing in Germany. The letters might as well have been excluded. The court, at the time they were admitted, instructed the jury that they could be considered by the jury only as bearing on the relationship existing at the time between appellee and his wife: that is, as tending to show the state of her mind. An examination of the letters shows that they could have had but little, if any, bearing on the case. A reversal based upon this ruling would not be justified upon any ground.

What we have said disposes of all of the principal questions

raised and discussed by counsel. The case is somewhat unusual, and the evidence quite different from that usually offered in cases of this character. The question upon the merits was, we think, clearly for the jury. The evidence is not conclusive, but was sufficient to justify the inference obviously drawn therefrom by the jury. We find no reversible error in the record, and the judgment is affirmed.—*Affirmed.*

All the justices concur.