D. W. Bates, Superintendent of Banking, Receiver of Niles & Watters Sàv. Bank, Appellant, v. James E. Remley, Administrator, Appellee.

No. 43892.

May 11, 1937.

Rhinehart & McLaughlin, for appellant.

James E. Remley, for appellee.

STIGER, J.—Prior to the death of A. J. Clarke, the defendant James E. Remley had been the guardian of his property for several years and as such guardian borrowed money from the Niles & Watters Savings Bank of Anamosa, Iowa, for the benefit of his ward's estate. The bank closed in January, 1932, and L. A. Andrew, superintendent of banking, was appointed receiver and B. E. Rhinehart of Anamosa was appointed attorney for the receivership.

At the time the bank closed, the guardianship estate owed the bank about $750, which indebtedness was represented by two notes. Mr. Clarke, a resident of Anamosa, passed away in November 1932, and Mr. Remley, on application of the heirs, was appointed administrator of his estate on November 19, 1932. He published notice of his appointment for four consecutive weeks in a weekly newspaper of Anamosa, the first publication being on December 1, 1932.

On July 3, 1934, Mr. Remley filed his guardian's final report and, pursuant to an order of court, gave notice of the hearing on said report by posting the notice in three public places. The report was approved and the guardian authorized to turn the assets of the guardianship estate over to the administrator of the estate, which was done. The assets consisted of a note in the sum of $1,650 secured by a first real estate mortgage and a small amount of cash. Early in 1933, the owner of the mortgaged real estate delivered a deed in blank to Mr. Remley. At the time Mr. Remley published his notice of appointment as administrator in December 1932, W. J. Roberts was examiner in charge of the bank and resided in Anamosa. In January 1933, Mr. Roberts was transferred and was succeeded by Mr. O. U. Conwell.

Code section 11972 provides that:

"All claims of the fourth of the above classes, not filed and allowed * * * within twelve months from the giving of the notice aforesaid will be barred, * * * unless peculiar circumstances entitle the claimant to equitable relief."

Plaintiff commenced this action in April 1936 and bases his

656

right to equitable relief on the following allegations: He alleges that he did not directly have charge of the bank, the receivership being handled exclusively by examiners in charge and assistant examiners; that the notes owed by the guardianship were listed among the assets of the receivership; that neither the plaintiff nor his predecessor or their representatives knew that A. J. Clarke was deceased until March 1935, and *supposed* that James E. Remley was still acting as guardian; that they had no notice that a guardian's final report had been filed or notice given of the time of hearing on said report and did not know of the publication of the notice of filing claims against the estate of Mr. Clarke; that O. U. Conwell has been the examiner in charge of said bank for more than two years and during that time he had conferred with James E. Remley with reference to the payment of said notes and *at no time was his attention called to the fact that A. J. Clarke was deceased and assumed from said conversation* that Mr. Remley was still acting as guardian and would take care of the indebtedness as soon as he could realize on said mortgage.

Plaintiff filed an amendment to his petition stating that James Jensen, an assistant examiner in charge, had the active management and control of the receivership from January 15, 1934, to April 1935; that, during said time, he had conversations with Mr. Remley as guardian of Mr. Clarke with reference to the paying of said notes and was given to understand that Mr. Remley was trying to sell the real estate, and when sold, said indebtedness would be paid.

The plaintiff prayed that he be authorized as receiver of the bank to file a claim against said estate and, when filed, the administrator be ordered to allow the claim against the estate.

Defendant filed an answer stating:

"That from the time of the appointment of administrator, notice of which appeared December 1, 1932, until on or about the month of November or December, 1935, there was an examiner in charge of the receivership of the Niles & Watters Savings Bank, either the examiner in charge or an assistant. That such examiners in charge maintained their residence in Anamosa, Iowa, and lived here from the time the administrator was appointed herein until October or November of 1935. That in addition to the examiners in charge, the receiver of the Niles &

Watters Savings Bank had a local attorney duly appointed and acting in all their matters during all of said time. That the plaintiff herein knew, or had reason to know, that the guardianship of A. J. Clarke was being closed and was closed, and that the estate of A. J. Clarke was being probated in the district court of Jones County, Iowa. That the plaintiff filed no claim of any kind or character against said estate and no claim is now filed except it be in this suit. That the statute of limitations has long since run against plaintiff's claim, or the right to file the same or have the same allowed, and that the defendant does not have any right to allow or pay the same, and that the court does not have any legal right to allow or pay the same. That there are no equities or reasons why this claim should be allowed or ordered paid at this time and that the petition fails to show any reason or equity why the statute of limitations should not apply thereto.''

Mr. Jensen, assistant examiner in charge from January 15, 1933, to April 1, 1934, during which time he resided in Anamosa, testified for the plaintiff that there were two notes secured by a mortgage given by Remley as guardian in the files of the bank; that he had several conversations with Mr. Remley about the notes, the main subject of the conversations being hard times, and the difficulty of selling land; that in a conversation had in the latter part of 1933, Mr. Remley informed him that the land securing the notes was not worth the amount of the notes and there would have to be a concession. The witness further stated:

''I approached him (Remley) as the one that made the loan and signed as guardian, and I considered him the proper party to take it up with because he, *as I understood it*, was guardian of Mr. Clarke.''

Mr. Conwell, examiner in charge, who succeeded Mr. Roberts in January 1933, lived in Cedar Rapids, Iowa, and went to Anamosa from one to three times a week on the business of the receivership. Mr. Conwell testified that he recalled talking with Mr. Remley in *November 1935* on the street; that he asked Mr. Remley what the prospect was of getting the Clarke guardianship notes cleaned up and he said that they would have to sell the property. That he suggested to Remley that the property be sold at auction and that Mr. Remley replied that it would be more just to all parties that it be worked out by private sale.

658

Mr. Conwell further testified that he first learned in February 1936 (over three years after Mr. Clarke's death) that Mr. Clarke had died and discovered the fact when he went to the clerk's office and asked for the papers in the guardianship.

Excepting certain documentary evidence, the above testimony of Jensen and Conwell is all the material evidence in the case.

■■■ Plaintiff's assignment of error is that the court erred in holding that plaintiff had failed to show peculiar circumstances that would entitle the claimant to equitable relief, and in denying claimant the right to file the claim and in disallowing the same.

The first contention of appellant is that he and his representatives had no notice that notice was given of the time of the hearing on the final report of the guardian and that the guardianship was closed and did not know of the appointment of Mr. Remley as administrator and that he published notice of his appointment, and, though the examiner conferred with Mr. Remley with reference to payment of the notes, that Remley did not call his attention to the fact that Mr. Clarke had passed away.

Plaintiff's position is untenable. Remley gave a proper, adequate notice of his appointment as administrator. Plaintiff, being a resident of the state of Iowa, was bound to take notice of the appointment and the fact that he did not have actual notice thereof is not a peculiar circumstance entitling him to equitable relief. Hawkeye Insurance Co. v. Lisker, 122 Iowa 341, 98 N. W. 127.

The defendant was under no legal obligation to personally call the attention of this particular creditor of the estate to the death of Mr. Clarke. Mr. Rhinehart, attorney for appellant, and Mr. Roberts, the examiner in charge, were residents of Anamosa at the time of the appointment of defendant as administrator and when the notice of his appointment was published. There is nothing in the record to suggest that Mr. Remley knew that plaintiff and his agents did not know of the death of Mr. Clarke and of the appointment of administrator of his estate.

Appellant urges that the fact that Mr. Remley did not file his final report as guardian and give notice of hearing thereon until July 1934, seven months after the year for filing claims had passed, and the conversations between Remley and the examiners, Jensen and Conwell, led plaintiff and his agents to believe

that he was acting as guardian, and constitute peculiar circumstances that entitle him to equitable relief. The conversations testified to by the examiners do not disclose that he said a single word to them that would reasonably mislead them into believing that he was talking to them as the guardian of Mr. Clarke and that Mr. Clarke was living. During the year 1933, Mr. Remley held a deed to the land securing the notes and his statement that the land would have to be sold before settlement was made was true. Mr. Remley would only have authority, at the time he had the conversations with the examiners, to sell the real estate as administrator and his statement is one that he would naturally make as administrator to a creditor of the estate. As stated in plaintiff's petition, the examiners *"supposed* that James E. Remley was still acting as guardian,'' and ''assumed from said conversation that Remley was still acting as guardian.'' This assumption and supposition could not be based on any statement made by Remley. The only reason appearing in the record for such an assumption is that the bank held the notes of Remley as guardian. As stated by Mr. Jensen, examiner, ''I approached Remley as the one that made the loan, and signed as guardian.''

Mr. Conwell testified that in November 1935, nearly two years after the time for filing claims had expired, he had a conversation with Mr. Remley about working the indebtedness out by a sale of the land. Such a statement by Mr. Remley manifestly could not be considered a circumstance that would excuse failure on the part of the appellant to file its claim within the limited period, that is, December 2, 1932, to December 2, 1933.

Appellant strongly relies on the fact that Mr. Remley did not file his guardian's report until July 1934, as a peculiar circumstance. He contends that by not filing the report, that Remley held himself out to the plaintiff and his agents as a guardian and misled them into believing that he was in fact acting as guardian and that his ward was living, and that his silence in failing to inform them of the facts constituted at least constructive fraud. We find no merit in this contention.

Mr. Remley had qualified as administrator and given notice of his appointment. By promptly giving notice, he represented to all interested parties that he was acting as administrator of his former ward's estate and that he was no longer acting as

guardian. He did not undertake to *act* as guardian except in the performance of his duty to file a final accounting and report.

The probate court approved the report. There is no trace of fraud or deception, constructive or actual, in the actions of the guardian from the time he was appointed as administrator until he was discharged as guardian.

Mr. Jensen testified: "I never looked in the records in the clerk's office concerning the guardianship of A. J. Clarke and never filed any claim against the guardianship or against the estate."

Mr. Conwell testified that he first learned about the death of Mr. Clarke when he went to the clerk's office in February 1936 and asked for the papers in the guardianship.

The appellant cannot be heard to say that he was misled by the failure of Mr. Remley to file his guardian's final report because it appears that his representatives did not examine the guardianship records and did not know whether the guardian had or had not filed a final report. Appellant could not be deceived or influenced by not knowing of the fact of which he complains. There was a clear lack of diligence on the part of plaintiff and his representatives. The receivership held the notes of the guardian, and appellant was satisfied to assume that Mr. Clarke was alive and that the active guardianship continued.

The appellant quotes from Howard v. McMillen, Executor, 101 Iowa 453, 457, 70 N. W. 623, 625, as follows:

"But, where silence would be misleading, a duty to speak may arise. A person may, under some circumstances, by passive conduct or silence, knowingly and intentionally deceive and mislead another, and thus perpetrate a fraud. 1 Bigelow, Frauds, 16, 597."

He cites in support of the rule the following cases: Iowa State Bank v. Rons, 203 Iowa 51, 212 N. W. 362; Foreman et al. v. Dugan, 205 Iowa 929, 218 N. W. 912. The appellant has cited a correct rule of law which has no application to the facts in this case. The record does not reveal that Remley made any statement, did anything or omitted to perform any duty imposed on him as administrator or guardian that could have reasonably influenced or induced appellant not to file his claim. Failure to file the claim can be attributed only to lack of diligence on the part of appellant. In determining whether a

claimant is entitled to equitable relief under the statute, the facts that the claim is just, the estate solvent and unsettled are entitled to consideration, but they are not "peculiar circumstances" within the meaning of the statute. The peculiar circumstances must exist independent of said facts. In re Estate of Palmer, 212 Iowa 21, 236 N. W. 58; Doyle v. Jennings, 210 Iowa 853, 229 N. W. 853; Chicago & N. W. R. Co. v. Moss, 210 Iowa 491, 231 N. W. 344, 71 A. L. R. 936.

Equitable relief will not be granted to relieve a claimant from negligence or lack of diligence. First Tr. Joint Stock Land Bank v. Terbell, 217 Iowa 624, 252 N. W. 769.

In arriving at our conclusion, we have not overlooked our decisions holding that the statute should be given a liberal construction in order to effectuate justice. Chicago & N. W. R. Co. v. Moss, 210 Iowa 491, 231 N. W. 344, 71 A. L. R. 936.

 While an action brought under Code section 11972 to establish peculiar circumstances as a basis for equitable relief from the bar of the statute is properly cognizable in equity, this action is one at law and the finding of the trial court has the same weight as the verdict of a jury and will not be disturbed on appeal if there is substantial evidence in the record to support it. Guardianship of Baldwin, 217 Iowa 279, 251 N. W. 696; In re Estate of Plendl, 218 Iowa 103, 253 N. W. 819.

The judgment of the trial court that there were no peculiar circumstances shown to entitle appellant to equitable relief against the bar of the statute is supported by substantial evidence.

It follows that the case must be and is affirmed.—Affirmed. (All italics ours.)

RICHARDS, C. J., and SAGER, ANDERSON, MITCHELL, DONEGAN, KINTZINGER, and HAMILTON, JJ., concur.