ROBERT WILLIAMS, Appellant, v. ELMER SCHEE, Administrator, Appellee.

A. T. GODLOVE, Appellant, v. ELMER SCHEE, Administrator, Appellee.

No. 41256.

June 24, 1932.

Howard L. Bump, for appellants.

Ben J. Gibson, for appellees.

KINDIG, J.—The Bank of Milo, also known as Schee Brothers and Company, was apparently organized as a copartnership in 1898 or 1899. In 1920 the partners were John F. Schee, James Schee, Samuel Shaw, Nathan Schee, and Lewis Schee. A Mr. Wikle appears to have owned some qualified interest in the bank, but apparently was not a partner. After 1920, the membership in the partnership remained the same until March 12, 1921, when Lewis Schee died. Following the death of Lewis Schee, the surviving partners seem to have conducted the banking business until May 17, 1926, when the institution closed, and was finally liquidated through a bankruptcy proceeding in the Federal district court of the United States in and for the southern district of Iowa.

Two administrators were in due time appointed for the estate of Lewis Schee. Elmer Schee now alone, so far as the present controversies are concerned, is the duly qualified and acting administrator of the estate of Lewis Schee, deceased. He is the defendant-appellee in the cases of Robert Williams, plaintiff and appellant, v. Elmer Schee, administrator of the estate of Lewis Schee, deceased, defendant and appellee, and A. T. Godlove, plaintiff and appellant, v. Elmer Schee, administrator of the estate of Lewis Schee, deceased, defendant and appellee. The record is not clear concerning why the second administrator did not continue as such.

Upon the appointment of the administrators, the statutory notice thereof was duly given on March 31, 1921. Although the

1184

statutory notice was thus given, Robert Williams and A. T. God-
love, appellants, filed no claims against the estate until the present
suits were instituted, on August 18, 1930. This was approx-
imately nine years after the foregoing notice had been given. So,
too, the commencement of these actions was about four years after
the Bank of Milo had closed.

Robert Williams and A. T. Godlove, appellants, were de-
positors in the Bank of Milo at the time it ceased doing business.
Each depositor apparently received thirty-seven per cent of his
claim through the bankruptcy proceedings. In order, then, to
obtain the balance due on the respective claims, Robert Williams
and A. T. Godlove, the appellants, commenced the present pro-
ceedings. As said in the preliminary statement, these proceed-
ings constitute four separate and distinct actions. Two cases are
brought by the appellant Robert Williams. He attempts in one
case to obtain judgment against the appellee Elmer Schee, ad-
ministrator of the estate of Lewis Schee, deceased, and in the
other, this appellant endeavors to obtain judgment against the
appellee Elmer Schee individually. Likewise two cases were
commenced by A. T. Godlove. Also, he in one case attempts to
recover judgment against the appellee Elmer Schee, as adminis-
trator of the Lewis Schee estate, and in the other this appellant
demands judgment against the appellee Elmer Schee individual-
ly.

The appellants attempt to obtain judgment against the ap-
pellee administrator upon one of the following three theories:

First: That the banking partnership from and after the
death of Lewis Schee until the institution closed was in the
process of liquidation. Therefore it is claimed by the appellants
that the estate is liable (a) for the partnership debts incurred
prior to Lewis Schee's death and (b) for the debts incurred as an
incident to the liquidation of the partnership business after Lewis
Schee's death.

Second: It is said by the appellants that they are entitled
to recover against the administrator for the reason that such ad-
ministrator, by investing new capital in the partnership, thereby
made the estate a partner in a new enterprise after Lewis Schee's
death, and that the claims sought to be established by the appel-
lants are debts of the new concern; and

Third: It is contended by the appellants that there are

equitable circumstances entitling them to file their claims against the Lewis Schee estate even though more than one year has elapsed since the statutory notice was given of the administrator's appointment.

Then, to establish their right to recover against the appellee Elmer Schee individually, the appellants rely upon an alternate proposition: that is to say, they claim that if the Lewis Schee estate were not authorized to engage in the banking business after his death, then in that event Elmer Schee, the administrator, who, under such circumstances, involved the estate in an unauthorized enterprise, himself thereby became personally liable.

These contentions of the appellants' will be considered in the following order.

I. Is the estate of Lewis Schee liable to appellants on the theory that the claims held by them were incurred as an incident to the liquidation of the Bank of Milo? Obviously not, under the record here presented. Appellants, as before explained, were depositors of the bank. They have no other claim. Those deposits were not accepted from either appellant for the purpose of liquidation. On the contrary, each deposit was accepted because the surviving partners were continuing the bank as a new partnership after the death of Lewis Schee. This was the basis upon which appellants made their deposits.

According to the record, each one of them understood that the bank was continuing as a going concern. Neither appellant thought, or had reason to think, that any deposit thus made was for the purpose of liquidating the bank. Apparently the administrators of the Lewis Schee estate obtained an order to sell his interest therein. This interest of the estate was merely nominal, for its value would not exceed $250. So, it appears that further liquidation of the bank was not considered necessary by the parties interested. Consequently, under all the circumstances, there is no ground for recovery against the estate on the theory here discussed.

II. In the second place, it is argued by the appellants that they are entitled to recover against the administrator because their deposits were placed in the bank after the district court, having charge of the probate proceedings, authorized the administrators to continue the business as a new partnership. It is important to know whether the district court did authorize the administrators to thus continue the partnership business. The

1186

old partnership was dissolved by the death of Lewis Schee. Ayres v. C., R. I. & P. Ry. Co., 52 Iowa 478 (local citation 491) ; Young v. Scoville, 99 Iowa 177; National Union Bank of Maryland v. Hollingsworth, 47 S. E. 618 (N. C.), local citation 622; Bank of Monroe v. Drew Investment Co., 53 So. 129 (La.) ; 20 Ruling Case Law 989, Sec. 225; 47 Corpus Juris 1111, Sec. 767.

That is the law unless: First, the decedent left a will authorizing the continuation of the partnership, which proposition after the decedent's death was accepted by the surviving partners; or second, the contract of partnership itself authorizes a continuation of the partnership. 20 Ruling Case Law 989, Sec. 225. Here Lewis Schee, the decedent, left no such will, nor was there a partnership contract containing the stipulation above contemplated. There was no order of court in the case at bar authorizing the administrators to continue the old or to formulate and operate a new partnership.

A claim is made by the appellants, however, that there was an order of court which by implication amounted to the authorization of the administrators to continue the partnership after Lewis Schee's death. Apparently a claim was filed against the estate for $2,500. Said claim, it seems, arose because of the failure of one Clayton, an employee. Upon the presentation of that claim, the district court allowed it, and the administrators paid the same. Manifestly this expenditure of money by the administrators was not in the nature of an original investment into either the old or the new partnership, but rather, the transaction involved only the payment of an obligation which the district court believed the estate owed because of the Clayton shortage. Clayton apparently was a former cashier of the bank before Lewis Schee died. So, it is clear that the district court neither by a direct nor an indirect order authorized the administrators to invest the estate funds in continuing the old, or operating the new, partnership after Lewis Schee's death.

Therefore, as before indicated, without such order of court the administrators could not bind the estate in the operation of a new business organized by the surviving partners after the death of Lewis Schee. Ayres v. C., R. I. & P. Ry. Co. (52 Iowa 478, local citation 491), supra ; Van Valkenburg v. Bradley & McCullough, 14 Iowa 108; National Union Bank of Maryland v. Hollingsworth (47 S. E. 618), supra, local citation 622; 20

Ruling Case Law 989, Sec. 225, supra; 47 Corpus Juris 1111, Sec. 767, supra. See, also, Cresco Union Sav. Bank v. Terry & Terry, 202 Iowa 778 (local citation 781). Contrary to the appellants' claims, the administrators as a matter of fact, under the record, did not seek to bind the Lewis Schee estate by any contract whatsoever.

III. This principle concerning the necessity of a court order under the circumstances is not overcome or made unnecessary by the ex-parte statements or pretenses of the surviving partners. Brown & Bliss v. Rains, 53 Iowa 81; In re Estate of Schultz, 196 Iowa 125.

According to the record, John Schee, a member of the banking partnership, made an affidavit, required by law, setting forth the names of the partners. John Schee apparently included in that list the name of the Lewis Schee estate as a member of the firm. Other acts and declarations of the surviving partners, it is declared, indicate that the Lewis Schee estate was still a member of the firm. In addition to the foregoing, it is asserted that certain advertisements likewise suggested that the estate continued to be a member of the firm.

Under the record, however, the administrators in no way managed the bank or authorized any such statement or pretenses on the part of the surviving partners. Moreover, there is nothing to indicate that any heir of Lewis Schee's, deceased, in any way authorized the statements or pretenses. Not only is that true, but also it appears that the administrators and those interested in the Lewis Schee estate knew nothing of such statements and pretenses. Consequently the contention of the appellants is without merit. During the foregoing discussion we have assumed, without deciding, that the estate in any event could be bound by the acts and declarations of the administrators not authorized by an order of court.

IV. Is the administrator liable to the appellants because of an indebtedness which arose before Lewis Schee died? Plainly this is not true, for two reasons. First, the one appellant did not become a depositor of the bank until after Lewis Schee's death, and the other appellant withdrew all of his deposit existing at the time of Lewis Schee's death before the present action was commenced. Whatever funds this last-named appellant may have had on deposit were placed there after Lewis Schee died. But it is said that this is true so far as the general checking account

was concerned, but is untrue in reference to the certificate of deposit held by this particular appellant. Such certificate of deposit apparently represents funds which this appellant from time to time withdrew from his checking account and put on interest. There is nothing to show, however, when the money was so transferred from one account to the other: that is to say, the appellant has not proven that the funds represented by the certificate of deposit were placed in the bank before Lewis Schee's death.

Furthermore, in the second place, assuming that the certificate of deposit did arise while Lewis Schee still lived, nevertheless a claim cannot now be established against his estate for the reason that the same was not filed within one year after the notice of the administrators' appointment had been duly given. Sections 11970 and 11972 of the 1931 Code provide, respectively:

"11970. Other demands [than administration expenses, funeral expenses, allowance for the widow, etc.] against the estate shall be payable in the following order: * * *

"3. Claims filed within six months after the first publication or posting of the notice given by the executors or administrators of their appointment.

"4. All other debts. * * *

"11972. All claims of the fourth of the above classes not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred, except as to actions against decedent pending in the district or Supreme Court at the time of his death, or unless peculiar circumstances entitle the claimant to equitable relief."

The same provisions may be found in the preceding Codes. As before explained, the appellants did not file their claims within the time above specified. These claims, if any existed, grew out of the partnership liability of Lewis Schee, deceased. When Lewis Schee died, the partnership was dissolved, as before explained. Lewis Schee was liable as a partner for all the debts of the partnership, including the claims of appellants, if any there were. Section 10983 of the 1931 Code contains the following provisions:

"Actions may be brought by or against a partnership as such, or against all or either of the individual members thereof,

or against it and all or any of the members thereof; and a judgment against the firm as such may be enforced against the partnership property, or that of such members as have appeared or been served with notice. A new action may be brought against the members not made parties, on the original cause of action.''

A similar provision may be found in the previous Codes, including the Code of 1897. When interpreting the foregoing legislation, this court said in Boeger & Buchanan v. Hagen, 204 Iowa 435, on page 438:

''Under this section it has been held that an action may be brought against only one of the partners as an individual, and such partner cannot insist that the partnership as such and the other individual partners be joined. Roenfield v. Poston, 186 Iowa 769. Under the statutes of this state and the interpretation we have placed upon the same in our decisions, it must follow that the rule suggested by Justice Holmes in [Francis v. McNeal, 228 U. S. 695] * * * is the rule in Iowa, to wit: that a partnership debt is in reality the individual debt of each of the individual members of the partnership, and their liability thereon is a primary liability, and not a secondary one.''

Manifestly, under the statute and the decisions, there is no contingency about the liability of a member of a partnership for the debts thereof. Such liability is fixed and definite, and not contingent. It is a personal, primary obligation. Boeger & Buchanan v. Hagen (204 Iowa 435), supra. Therefore, a claim based upon that liability must be filed against the estate within the time required by Section 11970, unless there are peculiar circumstances justifying equitable relief under the provisions of Code Section 11972. Taylor v. Jackson, 213 Iowa 844; Chicago & N. W. R. Co. v. Moss, 210 Iowa 491; Simpson v. Burnham, 209 Iowa 1108; Anderson v. Storie, 208 Iowa 1172. The question then is: Are there peculiar circumstances which entitle the claimant to equitable relief, although he did not file his claim in time? At this point, it is argued that the estate is solvent and unsettled. That in itself, however, does not amount to the ''peculiar circumstances'' contemplated by the statute. In cases of this kind, important consideration will be given to the fact that the estate is solvent and unsettled, because then there could be no prejudice to other creditors.

"The importance, therefore, of the solvent and unsettled condition of the estate is not to be minimized." Chicago & N. W. R. Co. v. Moss (210 Iowa 491), supra, local citation 495.

Nevertheless, as before stated, the mere fact that the estate is solvent and unsettled is not alone enough to constitute the "peculiar circumstances" which will afford equitable relief. No reason is offered by the appellant concerning why he did not file his claim within the statutory period. Obviously, the appellant did not so file the claim because he believed in the security of the bank operated by the surviving partners. Under these circumstances, it is apparent that the excuse offered by the appellant as a peculiar circumstance justifying equitable relief although the claim was not filed, amounts to nothing more than negligence. Such negligence will not permit a court of equity to raise the bar of the statute. Simpson v. Burnham (209 Iowa 1108), supra, and other cases above cited.

V. There remains, then, for consideration the question whether the district court erred in refusing to allow the appellants judgment against the administrator, Elmer Schee, personally. It is contended by the appellants that Elmer Schee engaged the estate in the banking business without authority. Hence it is concluded that the administrator is personally liable.

Assuming, without deciding, that such action of the administrator would make him personally liable, nevertheless it is apparent that the appellants have not sustained their allegations by the necessary proof. According to the record, the administrators of this estate in no way engaged in the banking business for the estate. The evidence indicates that the administrators took no part in the banking business. That being true, the district court properly refused to enter personal judgment against the administrator.

Wherefore, the judgment of the district court in each of the four cases must be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.