R. A. ANTHONY, Appellee, v. JACOB A. WAGNER et al., Executors, Appellants.

No. 41725.

Hughes, O'Brien & Faville, for appellants.

Howard L. Bump, for appellee.

KINDIG, C. J.—James D. Gamble, a resident of Knoxville, died testate November 26, 1926. In due time, to-wit, on December 13, 1926, Gamble's will was duly admitted to probate. Jacob A. Wagner and John E. D. Gamble, the defendants-appellants, in accordance with the will were appointed executors of the estate to serve without bond. When the letters testamentary were issued, to the aforesaid executors, the clerk of the Marion county district court indorsed thereon the following:

" * * * Upon consideration hereof, it is hereby ordered and directed * * * that the within named Jacob A. Wagner and John E. D. Gamble give notice of their appointment as executors of the estate of James D. Gamble by posting notice thereof in four places in Marion County, Iowa."

Subsequent to the issuance of the letters testamentary, the clerk of Marion county entered on the probate docket of that county the following:

"December 13, 1926, Jacob A. Wagner and John E. D. Gamble appointed executors without bond. Notice by posting. Letters issued. Record 60."

The notice above directed by the clerk of the Marion county district court was duly made by the executors.

Then, as required by law, the executors proceeded to administer the estate of James D. Gamble, deceased. After the administration of the estate had thus proceeded for a period of approximately

four years, the appellee-claimant, R. A. Anthony, filed a claim for $15,467.03. This claim was objected to by the executors on the theory that the statute of limitations had run against it. Such is true, the executors declare, because the claim was filed more than one year after notice of the appointment of the executors had been given, in accordance with the aforesaid order of the clerk of the Marion county district court.

A primary reason and, in the alternative, another reason, are assigned by the claimant why the executors' defense is not well taken:

First, the claimant says that the statute of limitations never commenced to run because the order of the clerk concerning the posting of notice of the executors' appointment was not spread upon the probate docket, as required by law; and

Second, in the alternative, the claimant declares that even if the notice were properly published, yet, because of equitable circumstances, the claimant's demand may be filed even at the late date before mentioned.

Following a hearing to the district court, the jury being waived, that tribunal found that the order of the clerk concerning the notice by posting was not spread upon the probate docket, as required by law. Not being content with its disposition of the case in that respect, the district court continued, and held in addition to the foregoing that equitable circumstances appear in the record, which, in any event, toll the statute of limitations. These propositions will now be discussed in the order named.

I. Before his death, the testator, James D. Gamble, was a partner of the firm which operated the Citizens Bank of Pleasantville. That institution was a private bank, owned by a number of persons, including the testator. Those owners of the bank operated the institution as a copartnership. Each partner's interest was represented by a certificate. The original capital of the copartnership was apparently $35,000. Of this amount the testator paid $3,000, and therefore held three shares of $1,000 each represented by a certificate or certificates.

While the bank at Pleasantville was thus operating, R. A. Anthony, the claimant and appellee, and the members of his family, deposited in the bank from time to time moneys in various amounts. Withdrawals were made and interest collected, but a balance of such deposits always remained in the bank. So, at the time of the death

of the testator, James D. Gamble, the claimant and his family had deposits in the Pleasantville Bank. After the death of the testator, Gamble, the claimant left his money on deposit in the bank, and as certificates of deposit from time to time matured he renewed them for himself and family in the bank operated by the surviving partners.

Thus the affairs stood at the time the bank closed, on August 12, 1930. The present claim is made by the claimant for the deposits of himself and family. It is for the claim thus arising that the claimant filed his demand against the James A. Gamble estate more than four years after the notice for the appointment of the executors had been posted, in accordance with the order of the clerk, above named.

An avoidance of the liability by the executors is based upon sections 11970 and 11972 of the 1931 Code. These sections provide respectively:

"11970. Other demands [than administration expenses, funeral expenses, allowance for the widow, etc.] against the estate shall be payable in the following order: * * *

"3. Claims filed within six months after the first publication or posting of the notice given by the executors or administrators of their appointment.

"4. All other debts."

"11972. All claims of the fourth of the above classes not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred * * * unless peculiar circumstances entitle the claimant to equitable relief."

To avoid the force of this special statute of limitations, the claimant contends, as before explained, that the notice of the executors' appointment was not spread on the probate docket, and therefore is void and of no effect. If the notice was legal, and there are no peculiar circumstances entitling the claimant to equitable relief, his claim is barred by the special statute of limitations, and he cannot now recover thereon. Chicago & Northwestern Railway Co. v. Alonzo Moss, Adm'r, 210 Iowa 491, 231 N. W. 344; Simpson v. Burnham, Adm'x, 209 Iowa 1108, 229 N. W. 679; Doyle v. Jennings, Adm'x, 210 Iowa 853, 229 N. W. 853.

There is for consideration here, then, the question whether the

notice given by the executors was based upon a legal and valid order therefor. According to the pleadings of the claimant, the *invalidity* of the notice, if any, rests upon the fact that the order of the clerk before mentioned was not spread at length upon the probate docket by the clerk, but rather that official merely made a mere abstract or notation thereof on such docket. It is conclusively proven, and in fact admitted by the claimant, that the order of the clerk directing the notice to be given by the executors was fully indorsed on the letters testamentary at the time of their issuance. The statute does not fix the notice to be given by the executors or administrators of an estate. Consequently it is essential that the court, or clerk of the court, in the proper jurisdiction direct what notice the executors should give of their appointment. This direction of the court, or clerk, must be indorsed on the letters when issued. Without a compliance with the statute in that regard, there is in law no notice. McConaughy v. Wilsey, 115 Iowa 589, 88 N. W. 1101; Mosher v. Goodale, 129 Iowa 719, 106 N. W. 195; Craig v. Craig's Estate, 167 Iowa 340, 149 N. W. 454; In re Estate of Camp, 188 Iowa 734, 176 N. W. 795; Spicer v. Administrator of the Spicer Estate, 201 Iowa 99, 202 N. W. 604.

Section 3304 of the 1897 Code provided that:

"The executors or administrators first appointed and qualified for the settlement of the estate shall, within ten days after the receipt of their letters, publish such notice of their appointment as the court or clerk may direct, which direction shall be *indorsed on the letters when issued.*" (Italics are ours.)

Under the Code of 1897, then, there was no requirement that the direction of the court, or the clerk, be entered on the probate docket. In Mosher v. Goodale, 129 Iowa 719, 106 N. W. 195, supra, we held that under the Code of 1897 it was necessary for the clerk only to indorse his order on the letters when issued. Because of that statute, this court declared that it was not necessary for such direction to be entered upon the court records. Later the law, as it appeared in the 1897 Code, was amended so now section 11890 of the 1931 Code provides:

"The executors or administrators first appointed and qualified for the settlement of the estate shall, within ten days after the receipt of their letters, publish such notice of their appointment as the court

or clerk may direct, which direction shall be indorsed on the letters when issued and *entered of record in the probate docket.*" (Italics are ours.)

This amended section of the statute was in effect when the clerk made the order for posting notice in the manner and way above explained.

Basing his argument on the italicized portion of the last-named section, the claimant now insists that before the notice of the administrator can be valid, the direction of the court or clerk must be, not only indorsed on the letters when issued, but in addition thereto spread upon the probate docket.

Manifestly a careful consideration of the subject will reveal that the claimant is mistaken in this regard. According to chapter 504 of the 1931 Code, the clerk of the district court is required to keep at least three books relating to the probating of estates. Section 11841 provides for a probate docket, while 11842 authorizes a probate record, and section 11843 makes necessary a bond record. The previous Codes made similar provisions for these records. There is set forth in section 11841 the matters which shall be shown on the probate docket. Full and complete journal entries of all orders and proceedings had in probate matters shall be kept in the probate record, according to section 11842 of the 1931 Code. Moreover, under said section 11842, the permanent record book shall contain, where real estate is sold or mortgaged under order of court, a complete record of such sale or mortgage. All bonds given by executors, administrators, and guardians shall be recorded in the bond record in compliance with section 11843, above named.

Throughout the history of courts, distinctions have been made between permanent records and dockets. That distinction is carried forward in the Iowa Code under its probate practice, as evidenced by the above and foregoing sections to which reference has just been made. A permanent record of a judgment or order is spread upon the record of the court contemplated therefor. On the other hand, a notation or abstract of the judgment is placed upon the court docket. It has been said that a judgment is not the conclusion in the mind of the judge when he is ready to decide the case (Kennedy v. Citizens National Bank, 119 Iowa 123, 93 N. W. 71), nor is such judgment the announcement of the court's conclusion (Kennedy v. Citizens National Bank, 119 Iowa 123, 93 N. W. 71), supra.

Again the judgment is not the memorandum entered in the court's calendar, nor the abstract "entered" in the judgment docket (Kennedy v. Citizens National Bank, 119 Iowa 123, 93 N. W. 71), supra, but rather the judgment is a permanent record recorded in, and spread upon, not the docket, but the books intended therefor. Kennedy v. Citizens National Bank, 119 Iowa 123, 93 N. W. 71, supra; Martin v. Martin, 125 Iowa 73, 99 N. W. 719;. State of Iowa ex rel. James Brown v. Beaton, 190 Iowa 216, 178 N. W. 1, 180 N. W. 166; Brooks, Executor, v. Owen, 200 Iowa 1151, 202 N. W. 505; Cooley v. Ayres, 180 Iowa 740, 163 N. W. 625; Thompson v. Great Western Accident Association, 136 Iowa 557, 114 N. W. 31; Kennedy v. Citizens National Bank, 119 Iowa 123, 93 N. W. 71, supra; Case v. Plato, 54 Iowa 64, 6 N. W. 128.

Contrary to the foregoing, a docket contains, not the complete record, but merely an abstract or notation thereof. See cases last above cited and Case v. Plato, 54 Iowa 64, 6 N. W. 128, supra; 19 Corpus Juris 381. Obviously, then, the legislature intended, under the amendment above named, to continue the indorsement on the letters as the official order, and the entry on the probate docket was to be the same as entries are generally contemplated on dockets, as ·distinguished from the spread of the order or judgment on the permanent record. By so providing, the legislature has inaugurated a scheme whereby one interested may know, by looking at the docket, whether the clerk or court has directed a notice to be given by the administrators or executors. Should the docket indicate such direction, the one seeking information may then proceed to investigate the probate files in the clerk's office where he may find the order of the court, or clerk, indorsed on the letters testamentary. Assuming that the letters testamentary may be out of the clerk's office in the possession of the executor or administrator, the one seeking information may, through the clerk, obtain possession thereof for legitimate purposes. That this procedure is contemplated is evidenced by the history of probate proceedings in this state.

Whether the entry on the probate docket in the case at bar was as full as it should have been becomes immaterial because the legislative authority for posting the notice of their appointment was the direction indorsed on the letters· testamentary, at the time of their issuance. See Carr v. Bosworth & Sons, 72 Iowa 530, 34 N. W. 317; Brown v. Barngrover, 82 Iowa 204, 47 N. W. 1082. Undoubtedly the legislature had in mind the distinction between permanent rec-

ords and probate dockets when it adopted the amendment in question appearing in the italics above made. The probate docket is generally not of such form or make-up as to permit the spreading of permanent orders or judgments thereon. Apparently the legislature desired an abstract or notation on the probate docket. Accordingly the probate docket is prepared for such abstract or notation of the order.

Without doubt, if the legislature had intended that the executors should not have authority to publish the notice until the same was spread upon the court records, it would have named the permanent record rather than the probate docket as the place for such entry. Lawyers know that the clerks of the district courts in Iowa frequently make abstracts or notations of such orders for publication on the probate dockets rather than a complete record of the order in question thereon. Therefore, if this court were to hold that the order should be spread in full upon the docket, contrary to that practice, then many estates which have been probated would be reopened. Under all the circumstances, it is apparent that the legislature advisedly required the order entered upon the docket rather than upon the permanent record. In the case at bar the clerk, as before explained, indorsed his order properly upon the letters testamentary, and then made an abstract or notation thereof on the probate docket, as contemplated by the legislature.

Of course, the executors in the case at bar, as generally, have the burden of proving that they gave the proper notice to start the running of the special statute of limitations now under consideration. Spicer v. Administrator of the Estate of Spicer, 201 Iowa 99, 202 N. W. 604, supra; Bates v. Thomas, Adm'r, 188 Iowa 734, 176 N. W. 795; Craig v. Estate of Craig, 167 Iowa 340, 149 N. W. 454.

But under the conclusion above reached, it is apparent that such notice was properly given. Hence, the claimant cannot recover, unless he has shown peculiar circumstances entitling him to equitable relief. Whether, because of some section of the statute other than section 11890 of the 1931 Code, not discussed in this opinion, the order for publication should be recorded in the book on which permanent probate records are spread, we do not now decide or suggest, because the question was not raised in the issues before the district court.

II. Peculiar circumstances are relied upon by the claimant to toll the special statute of limitations above discussed. Unques-

tionably the statute allowing equitable relief, when special circumstances have been shown, is to be given a liberal construction in order to effectuate justice. Chicago & Northwestern Railway Co. v. Alonzo Moss, Adm'r, 210 Iowa 491, 231 N. W. 344, supra; Simpson v. Burnham, Adm'x, 209 Iowa 1108, 229 N. W. 679, supra.

■ In cases of this kind, important consideration will be given to the fact that the estate is solvent and unsettled, because then there can be no prejudice to other creditors. The importance, therefore, of the solvent and unsettled condition of the estate is not to be minimized. Chicago & Northwestern Railway Co. v. Alonzo Moss, Adm'r, 210 Iowa 491, 231 N. W. 344, supra.

It appears from the record that the estate of James D. Gamble in the case at bar is solvent and the administration thereof has not been completed. When considering the fact of solvency, however, it must be remembered that this status of the estate alone is not a peculiar circumstance authorizing equitable relief. Chicago & Northwestern Railway Co. v. Alonzo Moss, Adm'r, 210 Iowa 491, 231 N. W. 344, supra; Simpson v. Burnham, Adm'x, 209 Iowa 1108, 229 N. W. 679, supra; Doyle v. Jennings, Adm'x, 210 Iowa 853, 229 N. W. 853, supra. So the peculiar circumstances required by the statute must exist "independent of the fact that the estate is solvent and unsettled." Chicago & Northwestern Railway Co. v. Alonzo Moss, Adm'r, 210 Iowa 491, 495, 231 N. W. 344, 346, supra. With that thought in mind, it is now important to consider whether the claimant in the case at bar has presented facts and circumstances entitling him to the relief asked.

According to his argument, the claimant relies for such peculiar circumstances upon the following facts: James D. Gamble, by his will bequeathed one share of the aforesaid capital stock of the partnership bank to each of the following beneficiaries: Ira L. Gamble, John E. D. Gamble, and Myrtle Gamble Wagner. Shortly after the testator's death, an attorney for the executors, together with Mr. Wagner, made an investigation of the partnership affairs. After such investigation, the attorney advised his clients not to accept the shares because, in his opinion, the bank at the time was insolvent. As a result of this advice, the attorney, acting for his clients, returned to the bank the three certificates of stock which previously had been mailed by the bank to his clients. Then an effort was made by the surviving partners to induce the estate to advance a 500 per cent

.assessment to restore the solvency of the bank; whereupon the executors refused to make the contribution.

Apparently the executors did, however, execute a written stipulation providing that after a year, and within twenty months, the surviving partners might file a contingent claim with the estate, not to exceed $15,000. Such stipulation never was filed of record, and apparently was unknown to the depositors in the bank. So, it is now contended by the claimant that the stipulation was entered into for the purpose of permitting the statute of limitations to run before depositors would become excited because of the insolvency of the bank, and therefore file claims against the estate. Furthermore, it is said by the claimant that Mr. Wagner, one of the executors, consented that the interest of Mr. Dyer in the bank should be purchased because the said owner was threatening to close the bank. Mr. Wagner also, it is said, arranged with Mr. Homer Miller, of the Iowa National Bank, for assistance in making a loan to the Pleasantville Bank. There is nothing, however, in the record to indicate that the claimant was in any way deceived by these transactions. The claimant knew nothing, so far as the record shows, about the arrangement with the surviving partners to file claims after a year, but within twenty months. This arrangement was no more for the benefit of the estate than it was for the surviving partners. Those surviving partners could have been sued after the year had passed, even though the estate could not. Said arrangement between the executors and the claimants was evidently for the purpose of permitting the bank to work out its salvation, with the hope that depositors thereby would be protected.

None of the transactions above set forth in any way affected the attitude of the claimant in reference to filing his claim. Not knowing of the matters of which he now complains, he could not, of course, have been influenced thereby. R. A. Anthony, the claimant, could have filed his claim against the estate within a year, had he so desired. It was not the duty of the executors to broadcast rumors about the bank, and thereby cause a run upon it, but rather it was natural for them to allow the bank an opportunity to solve its financial problems, if it could. The claimant's failure to thus file his demands against the estate within the time required by law was not induced by fraud, misrepresentations, or promises of any kind. Such fraud, misrepresentations, and promises, if any existed, must

be proven by the claimant, and he has failed to do so. Fraud will not be presumed.

Under the circumstances, the only reason that the claimant did not file his claim within the statutory period was because he desired to accept the bank as a creditor. So far as the record shows, the surviving partners believed the bank might work out its difficulties and pay its creditors. No one prevented the claimant from filing his claim against the estate, as by law required. Consequently his failure so to do amounts to negligence. Chicago & Northwestern Railway Co. v. Alonzo Moss, Adm'r, 210 Iowa 491, 231 N. W. 344, supra; Simpson v. Burnham, Adm'x, 209 Iowa 1108, 229 N. W. 679, supra. James D. Gamble's death dissolved the partnership. Williams v. Schee, 214 Iowa 1181, 243 N. W. 529. There is no provision in the will authorizing the continuance of the partnership, and apparently the contract of partnership did not authorize the continuation thereof after the death of James D. Gamble. The record does not indicate that the district court authorized the executors to continue the partnership business for the estate, nor does it appear that they attempted to do so. Williams v. Schee, 214 Iowa 1181, 243 N. W. 529, supra. Therefore, upon the death of the partner James D. Gamble, it was incumbent upon the claimant to file his claim for such primary liability within the time limited by the foregoing statute, and not having done so, his recovery is barred because his negligence in failing to so file the claim is not a peculiar circumstance justifying equitable relief.

Wherefore, the judgment of the district court must be, and hereby is, reversed.—Reversed.

STEVENS, MITCHELL, ANDERSON, EVANS, ALBERT, DONEGAN, and KINTZINGER, JJ., concur.