FEDERAL LAND BANK OF OMAHA, Appellee, v. LILLIE F. BONNETT et al., Appellants.

No. 44718.

FEBRUARY 7, 1939.

D. L. Murrow, T. W. Miles, and Robert L. Cheshire, for appellee.

G. C. Stuart and A. V. Hass, for appellants.

BLISS, J.—John R. Bonnett died intestate on June 6, 1935. His surviving spouse, the defendant, Lillie F. Bonnett, qualified as administratrix of his estate, and on June 14, 1935, duly posted notice thereof as directed by the clerk of the Lucas district court. The defendant, Martha Bonnett, a daughter of the deceased, was his only heir. The court costs, expenses of administration, claims filed, and other items of disbursement were paid, and the remaining personal property was fully distributed between the surviving spouse and daughter. On December 18, 1936, the administratrix filed her final report, and on the same day a Judge of the court ordered the report for hearing on

December 26, 1936, and directed that notice thereof be given by posting. Notice was given as ordered and, on January 4, 1937, the court, by an order, duly made and entered, approved the final report, discharged the administratrix and, closed the estate.

On March 23, 1937, the appellee brought this independent suit in equity by filing application in the office of the clerk of the district court of Lucas county for an order vacating its order approving the final report in the estate, and for leave to file its claim for the balance owing on a mortgage indebtedness of $9,000 of Robert Larrington and wife, executed to it, on or about March 17, 1920, which it alleged the decedent had assumed and agreed to pay in a deed of the mortgaged premises executed and delivered to him by the Larringtons, on or about February 27, 1920. As "peculiar circumstances" excusing its default in not complying with the provisions of section 11972, Code of Iowa, 1935, the appellee alleged that it was in complete ignorance of the decedent's death until February 24, 1937; that its claim was valid, the estate solvent in excess of $50,000, and the assets of the estate were traceable into and to be recognized in the hands of the heirs.

The appellants filed a resistance to the application denying knowledge of the execution of the Larrington mortgage, and alleging that the deed from Larrington to the deceased was in fact a mortgage, intended by the parties thereto only as security for indebtedness of Larrington to the decedent, and that there was no consideration for the assumption agreement. Appellants further alleged that the appellee had maintained agencies in Chariton during the pendency of the estate and that those in charge knew of the decedent's death, and that it was guilty of laches and, there were no equitable reasons for reopening the estate. All other allegations were denied.

In its reply the appellee denied generally the allegations of the resistance, and alleged that on March 27, 1928, while the decedent was the owner of the land in question, he and his wife executed an agreement extending the maturity of the said mortgage indebtedness at reduced interest.

Trial was had before the judge, sitting as a court of equity, and it entered judgment and decree reopening the estate, setting aside the order approving the final report, and granting appellee a reasonable time to file its claim in the estate. It is

from this judgment and decree that the appellants herein appealed.

Thereafter, and on January 7, 1938, the appellee in a separate proceeding in probate, in the reopened estate, entitled The Federal Land Bank of Omaha, Nebraska, Claimant, v. Lillie F. Bonnett, Administratrix of the Estate of John R. Bonnett, Deceased, Defendant, filed petition for the allowance of its said claim. Trial was had at law before a judge and jury, and on motion of the appellee a verdict was directed for appellee, and judgment rendered thereon for $7,763.08. The defendant-administratrix appealed from the judgment in the case last above entitled, and said appeal is No. 44719 in this court, 226 Iowa 126, 284 N. W. 105.

I. Before proceeding to the merits of the appeal in this cause it is necessary to dispose of the jurisdictional question raised by the appellee in its motion to dismiss the appeal herein, because, as it alleges and contends, no appeal lies from the judgment and decree appealed from.

It is the contention of the appellee that the order appealed from is not a final judgment within the provisions of section 12822 of the Code of 1935, nor an intermediate order within the purview of paragraph 4 of section 12823 of said Code. It bases its contention upon the decision of this court in the case of Ontjes et al. v. McNider et al., 224 Iowa 115, 128, 275 N. W. 328, 330, wherein it was held that no appeal lay from the judgment of the trial court permitting the plaintiffs to file their claim in the estate, after the year allowed by section 11972 of Code of 1935. The holding in the Ontjes case is right, but it does not rule the decision in this appeal. It will be noted that in the Ontjes case the estate was open, and that the action was a probate proceeding at law, in the estate, to which not only the executors but also the surviving spouse and the only heir were made defendants. The order appealed from was not a final judgment, nor an intermediate order "involving the merits or materially affecting the final decision." It was merely an intermediate order inhering in the final judgment on the claim, which could be reviewed in an appeal from this final judgment in the probate proceeding.

The situation in the case now before the court is entirely different. In this case the appellee brought a separate, independent suit in equity, not against the administratrix, but

against the surviving spouse and the only heir, praying for a judgment and decree setting aside the final order of the probate court closing the estate, and the final order approving the final report of the doings of the administratrix, in making distribution of the assets of the estate. In this case the estate was closed and the property distributed to the widow and the heir, and by the decree appealed from, the estate was reopened and their property rights were endangered. Certainly this adverse judgment in an independent action was of such finality as to entitle the appellants to appeal therefrom.

Appellee contends that the administratrix as the representative of the widow and heir, and those interested in the estate, is the proper party to appeal and that that appeal should be in the final hearing on the claim, since the judgment and decree was not final as to her, and was an intermediate order which could only be appealed from in the final judgment on the claim. It may be that under the authority of Ryan v. Hutchinson, 161 Iowa 575, 143 N. W. 433, and Packer v. Overton, 200 Iowa 620, 203 N. W. 307, the administratrix was a proper appellant from the decision in this cause, even though not a named party defendant. A determination of that question is not necessary to a decision in this case, and we do not determine it, because, as stated, the judgment was one from which the defendants might and did appeal. Appellee's motion to dismiss the appeal is therefore overruled and denied.

II. We come now to the merits of the appeal and to a determination of the question of whether the appellee has established, those "peculiar circumstances" excusing its failure to file its claim and serve notice of hearing thereon, within the twelve-month period specified in said Code section 11972, and thereby entitle it to the equitable relief provided therein.

This special statute of limitations, or nonclaim statute, as it is often called, in some like form, is found in the statutes of most of the states. The purpose of statutes of this kind is to secure the early and final settlement of estates. As stated by the South Dakota court in Davey v. McShane, 47 S. D. 265, 197 N. W. 680, 681:

"It is not the policy of the law to extend the time indefinitely for creditors to file their claims against the estate of a de-

ceased person. Under the provisions of the law creditors have it in their power to expedite action on their claims.''

The supreme court of Missouri spoke to the same effect, in State ex rel. Buder v. Brand, 305 Mo. 321, 265 S. W. 989, 991, to wit:

''The notice [of administration] prescribed by the statute is a warning notice. Its specific purpose is to start the running of the special statute of limitations which precludes the presentation of demands after a time considerably in advance of the bar of the general statute. The general object is, of course, to speed up the administration of estates, to the end that they may be turned over to the persons beneficially interested in them at the earliest possible moment.''

The purpose of this statute and the attitude of this court toward it were well expressed by Chief Justice Wright, in Brewster v. Kendrick, 17 Iowa 479, 481, in language as applicable today as when it was written. We there said:

''We are not disposed to recognize any rule or countenance any practice which will tend to retard the speedy settlement of estates. We believe the spirit of the statute accords with the interest of heirs and all of those interested in the assets of the estate, in requiring administrators to be prompt and expeditious in the discharge of their duties, and creditors to be diligent in the presentation and establishment of their claims. And yet there may be cases, and the section above quoted recognizes them, when the delay shall not operate as an absolute bar, and when, to deny the creditor relief, would be manifestly inequitable and unjust. Negligence, however, can never afford a passport to the relief contemplated by the statute. The creditor should be diligent, and the amount of his diligence is always to be measured by the circumstances surrounding him, taken in connection with the condition of the estate, and its administration at the time the relief is sought. Each case must be determined to a great extent, from its own circumstances, keeping in view the spirit of the law, and the rights and duties belonging to and devolving upon those interested in establishing and resisting the claim.''

And within the year this court speaking through Justice Hamilton, in Hagen v. Nielsen, 225 Iowa 127, 131, 279 N. W.

94, 96, said: "A statute of limitations should not be lightly set aside."

This court has at different times reiterated the principle that no generalized rule is possible, as the question whether relief will be granted in any particular case depends upon the circumstances of that case. In re Estate of Palmer, 212 Iowa 21, 236 N. W. 58; Simpson v. Burnham, 209 Iowa 1108, 229 N. W. 679; In re Estate of Jacob, 119 Iowa 176, 93 N. W. 94; Roaf v. Knight, 77 Iowa 506, 42 N. W. 433; Meier v. Estate of Briggs, 221 Iowa 482, 265 N. W. 189; Hagen v. Nielsen, supra.

The principle is also recognized by this court that the statute, being a remedial one, is to be liberally construed to effect its purpose and to effectuate justice. Chicago & N. W. R. Co. v. Moss, 210 Iowa 491, 231 N. W. 344, 71 A. L. R. 936; Anthony v. Wagner, 216 Iowa 571, 246 N. W. 748; Nichols v. Harsh, 202 Iowa 117, 209 N. W. 297; Simpson v. Burnham, 209 Iowa 1108, 229 N. W. 679.

Cases of this kind have been before this court so frequently and the general principles of law pertinent thereto have been so often fully stated and discussed with citation of authority in support thereof, that further statement thereof or citation, except as to certain rules particularly applicable to the facts herein, is unnecessary.

Turning to the "peculiar circumstances" alleged by appellee, we find them to be: first, that the estate was and is solvent; second, that the assets of the estate are traceable into the hands of the heirs; third, that since receiving the letter of G. C. Stuart on February 24, 1937, mentioning the administration of the estate, it has been diligent in presenting its claim; fourth, that it had no notice of the death of the decedent, until receipt of that letter; fifth, that the claim is a valid one.

Taking these circumstances in order, it appears, without question, both by proof adduced, and by concession made, that the estate "was and is solvent". However, this fact is not, in itself, a peculiar circumstance entitling a tardy claimant to equitable relief under the statute. This principle has frequently been announced by this court, and quite recently by Justice Stiger, in Bates v. Remley, 223 Iowa 654, 661, 273 N. W. 180, 184, as follows:

"In determining whether a claimant is entitled to equit-

able relief under the statute, the facts that the claim is just, the estate solvent and unsettled are entitled to consideration, but they are not 'peculiar circumstances' within the meaning of the statute. The peculiar circumstances must exist independent of said facts.''

See, also, Lucas, Executor, v. Ruden et al., Executors, 220 Iowa 494, 260 N. W. 60; Williams v. Schee, Admr., 214 Iowa 1181, 243 N. W. 529; Meier v. Estate of Briggs, 221 Iowa 482, 265 N. W. 189; Anthony v. Wagner, 216 Iowa 571, 246 N. W. 748; Roaf v. Knight, 77 Iowa 506, 42 N. W. 433; Anderson v. Storie, 208 Iowa 1172, 227 N. W. 93, 66 A. L. R. 1410; In re Estate of Palmer, 212 Iowa 21, 236 N. W. 58; Doyle v. Jennings, 210 Iowa 853, 229 N. W. 853. While this factor is to be considered and is not to be minimized, it is not controlling. Chicago & N. W. R. Co. v. Moss, 210 Iowa 491, 231 N. W. 344, 71 A. L. R. 936; Smallwood v. O'Bryan et al., 208 Iowa 785, 225 N. W. 848; Peterson v. Johnson, 205 Iowa 16, 212 N. W. 138; Nichols v. Harsh, 202 Iowa 117, 209 N. W. 297.

The second circumstance is the fact that the assets may be found in the possession of Mrs. Bonnett and the daughter. In the cases just mentioned it is held that the fact that the estate is unsettled is not alone such a circumstance as entitles a claimant to relief under the statute. With how much better reason can it be said that the fact that the estate has been closed and the assets distributed, even though they may be traced, is not such a circumstance? The fact that an estate is still open and unsettled is mentioned in a number of our cases as an important element in determining whether equitable relief should be granted. Roaf v. Knight, supra; Johnston v. Johnston, 36 Iowa 608; In re Estate of Jacob, 119 Iowa 176, 93 N. W. 94. In Brewster v. Kendrick, 17 Iowa 479, it is said:

''But a most controlling consideration is, that the estate remains unsettled. The assets have not been distributed, and had not when this claim was filed.''

In Shomo v. Bissell, 20 Iowa 68, we said:

''In every instance in which we have granted relief in this class of cases, the estate remained unsettled and undistributed; and claimants should be held to very strict proof when they come in after final settlement and seek to interfere, either with pay-

ments already made, or to subject still other property to the payment of their debt. The fact of final settlement, and especially when made, as in this case, years after the grant of administration, is a most controlling circumstance under the statute."

In Potter v. Brentlinger and Guinn, Executors, 117 Iowa 536, 538, 91 N. W. 809, action was brought against the executors of a closed estate, to establish a belated claim. It was not allowed on appeal. We said:

"One of the reasons for allowing a year only within which to file claims, instead of a shorter time, is that none shall be overlooked or forgotten. * * * The circumstance that an estate is open and unsettled is mentioned in many of the cases as of great importance. Certainly, a stronger showing should be exacted after full settlement, *but even then much necessarily depends on whether distribution has been made.*" (Our italics)

In Hagen v. Nielsen, 225 Iowa 127, 131, 279 N. W. 94, 96, supra, the court, in granting the claimant relief, said: "A most controlling consideration is that the estate remains unsettled and is solvent."

While the fact that an estate is closed does not bar a claimant under this statute (Manatt v. Reynolds, Admr., 114 Iowa 688, 87 N. W. 683; Hazlett v. Burge, 22 Iowa 531) it adds to his burden. Certainly the fact that the distributed assets are traceable has little, if any, weight, as a peculiar circumstance, in the appellee's favor.

The third circumstance urged is that the appellee was diligent after receiving actual notice of the death of Bonnett and the administration of his estate. There is no question about this, but this fact aids the appellee but little.

The fourth circumstance relied upon by appellee is that it had no notice of the death of the decedent. This is a purely fact question and it is necessary to set out the pertinent facts. Appellee in argument states that its action was based upon no *actual* knowledge of decedent's death in time to comply with the statute. Under section 11890 of the Code, executors and administrators shall publish such notice of their appointment as the court or clerk may direct." The clerk in this case directed the administratrix to publish notice of her appointment by posting. So far as the record discloses the administratrix had nothing to do

with this choice of notice. The appellee concedes both the validity and the giving of the notice as directed. It was directed "to all persons, companies, corporations, associations and others interested in the Estate of John R. Bonnett, deceased." Whether they were residents or nonresidents of Iowa would be immaterial. After giving the notice as directed there was no further burden on the appellant, under the record, to give any additional or actual notice to the appellee. The claimant, in Bates v. Remley, 223 Iowa 654, 658, 273 N. W. 180, 182, contended that the representative of the estate should have called his attention to the intestate's death. To this the court, through Justice Stiger, replied:

"Plaintiff's position is untenable. Remley gave a proper, adequate notice of his appointment as administrator. Plaintiff, being a resident of the State of Iowa, was bound to take notice of the appointment and the fact that he did not have actual notice thereof is not a peculiar circumstance entitling him to equitable relief. Hawkeye Insurance Co. v. Lisker, 122 Iowa 341, 98 N. W. 127.

"The defendant was under no legal obligation to personally call the attention of this particular creditor of the estate to the death of Mr. Clarke. Mr. Rhinehart, attorney for appellant, and Mr. Roberts, the examiner in charge, were residents of Anamosa at the time of the appointment of defendant as administrator and when the notice of his appointment was published. There is nothing in the record to suggest that Mr. Remley knew that plaintiff and his agents did not know of the death of Mr. Clarke and of the appointment of administrator of his estate."

Under the record it does not lie in the mouth of the appellee to urge that the posting of the notice as directed by the clerk is a peculiar circumstance because as he argues it was the least liable to give him actual knowledge. There is no basis on which to charge the appellee with any ulterior connection therewith.

In Hawkeye Insurance Company v. Lisker, Executor, 122 Iowa 341, 98 N. W. 127, the plaintiff, as a ground for equitable relief under the statute, contended that it had no actual notice of the executor's appointment, which was duly published in the proper jurisdiction. This court said:

"It will not do to say that because it had no actual notice

thereof it may claim equitable relief, because to so hold would destroy the limitation entirely, except in cases of actual notice, while the statute expressly provides for service by publication.''

Bonnett died June 6, 1935. The estate was opened on June 14, 1935, and was closed January 4, 1937—nineteen months after Bonnett's death. The appellee, during the years 1934, 1935 and until about April 1936, had a fieldman, E. R. Jordan, stationed at Chariton, in Lucas county. His duties were to collect or to service loans and to contact the local secretaries and treasurers of the various National Farm Loan Associations, and to advise with them in reference to different loans that the appellee had in the territory, and to discover the conditions of loans and how they were getting along. There were two such local loan associations in Chariton in 1934, 1935 and 1936, of one of which J. C. Williamson was secretary and treasurer. J. E. Hanson, another fieldman, was in Lucas county for about two months, but the year is not disclosed, although he knew of Jordan being there. These local loan associations solicited loans to be made through the Federal Land Bank. They indorsed the borrowers' notes as guarantors. If there was a loss on a loan the association stood good for it. Mr. Boyles, an attorney for the Farm Credit Administration, of which the appellee was a member, was the only representative of the latter who testified for appellee. The Larrington loan matter first came to his attention March 20,. 1937. He testified that he corresponded with the fieldmen on matters pertaining to the Federal Land Bank's business, and the fieldmen gave him the information inquired about; that the appellee, in one department or another, used the local secretaries as a source of information about their different loans; that where the facts warranted it, it was common to have considerable correspondence between the local secretaries and the different departments of the appellee as to the status of some particular loan. J. C. Williamson, the secretary and treasurer of one of the local loan associations, a witness for appellant, maintained an office at Chariton. Appellee's fieldman, E. R. Jordan, used this office for the transaction of his business when in town, and had conferences with borrowers there. Williamson made collections for the appellee, on its loans, current and delinquent, *for which the appellee paid him commissions.* (Italics are ours.) He knew Bonnett and his wife intimately for over forty years,

and knew of Bonnett's death and the pendency of his estate. On September 29, 1933, the collection manager of appellee at Omaha, wrote Bonnett, as follows: " * * * We will ask you to please meet Mr. E. R. Jordan, representative of this bank, Tuesday afternoon, October 3, 1933, at the office of Secretary-Treasurer, Mr. J. C. Williamson, Chariton, Iowa. Kindly arrange to keep the above appointment, as *our* (Italics ours) Secretary-Treasurer and Representative will cooperate with you." Such meeting was had and the appellee advised of it.

No representative of the appellee testified as a witness for appellee as to his knowledge or lack of knowledge of Bonnett's death or of the administration of his estate. E. R. Jordan, appellee's representative and fieldman, was living at Chariton when Bonnett died, and continued to live there for about eleven months thereafter while his estate was being administered. It is significant that appellee did not call him as a witness. His knowledge was its knowledge. Bonnett had lived in the community for many years. He left a net estate of $53,000. He was a man of some prominence in Lucas county. His death and funeral would naturally be given considerable publicity. His widow as administratrix collected cash receipts of $32,899.43 and disbursed $25,390.06 during the eighteen months of her administration. The numerous transactions involved therein would add to the publicity. It is strange that the appellee or its representatives did not learn of Bonnett's death and the administration of his estate. The exercise of reasonable diligence would have disclosed those facts to the appellee. It has shown neither diligence nor excuse for lack of diligence. Taylor v. Jackson, 213 Iowa 844, 239 N. W. 519; First Trust Joint Stock Land Bank v. Terbell, 217 Iowa 624, 252 N. W. 769; Schlutter v. Dahling, 100 Iowa 515, 69 N. W. 884.

The fifth circumstance relied upon by appellee is that its claim is a valid and just one. This is vigorously denied by the appellants. Whether the claim is valid and just is no more relevant or material as an avoidance of this special statute of limitation, than the same fact would be if interposed as a bar to the general statute of limitations. It is not a peculiar circumstance which in any way aids the appellee. In Doyle v. Jennings, 210 Iowa 853, 856, 229 N. W. 853, 854, Justice Evans speaking for the court, with his accustomed clarity of reasoning and of expression, fully answered appellee's contention, in these words:

"The 'equity' most forcefully contended for by counsel is the fact that the claim was a just claim; that the Mullin estates were solvent; that no one had suffered prejudice by the delay; that, therefore, equity required that such just claim be paid. The argument has its appeal, but quite independently of the statute. (Code 1927, section 11972). It is an argument for amended legislation. As applied to the existing statute, it is quite subversive of it. If the justness of the claim is a sufficient equity to comply with the requirements of the statute, then the statute itself is an idle one. The requisite of justness is imperative, even when the claim is filed within the period of limitation. It is no less required after the period of limitation, even when peculiar circumstances entitling the plaintiff to equitable relief are approved. In other words, the justness of the claim is not a 'peculiar circumstance,' within the meaning of this statute. On the contrary, it is of the very essence of the claim itself."

For later confirmation of this sound principle see In re Estate of Palmer, 212 Iowa 21, 236 N. W. 58; First Trust Joint Stock Land Bank v. Terbell, 217 Iowa 624, 252 N. W. 769; Bates v. Remley, 223 Iowa 654, 273 N. W. 180.

Appellee in its argument states this circumstance in this language: "For the purpose and intent of this action The Federal Land Bank has a just claim." The merits of the claim, outside of the allegations of the pleadings and some scattered items of evidence, were not gone into on the trial. While there are separate appeals in this court, they were argued together orally, and the printed arguments in each case are not closely confined to the abstracted records in each case. We have read the record in each case, and inasmuch as the decision in this appeal is necessarily decisive of the appeal in the other case, (No. 44719) we may properly refer to one phase of that case which pertains to this "fifth circumstance" we are discussing. The appellant in that case sought to show by competent witnesses what she claimed was the true situation relative to the Larrington deed to Bonnett, namely, that the deed was in fact a mortgage given to secure Bonnett for a loan of $5,000 which Larrington added to the $9,000 which he borrowed from the appellee to buy this land; that there was no consideration for the assumption clause in the deed; that it was agreed between Larrington and Bonnett that the latter should not be liable for the payment of

the $9,000, but that its payment was the obligation of Larrington. The testimony offered by appellant to prove these facts was clearly admissible and if admitted would have carried the case to the jury. It was rejected by the court upon the erroneous theory that it varied the terms of a written contract. The justness of the appellee's claim was very questionable under the appellant's profferred testimony.

The appellee contends that because the administratrix paid all claims against the estate by her check as administratrix except two interest payments to appellee which she paid by draft, that she was attempting to conceal her husband's death from the appellee. She was a witness for the appellee and fully explained this matter. Having vouched for her as a witness, the appellee cannot thus discredit her. Appellee further urges that the administratrix knew this land was worth less than the incumbrance, and that the fact that her attorney delayed writing the letter of February 23, 1937, until that time, advising appellee that the appellants were willing to deed the land to it, all indicate a purpose on their part to mislead the appellee. The record discloses no basis of fact for these inferences.

We have read all of the cases cited by appellee and it is our conclusion that the facts in this case clearly distinguish it from all of the cited cases.

This being an appeal in an equity action it is triable de novo. While we have high regard for the eminent ability of the distinguished judge of the lower court, only lately deceased, it is our judgment that judgment and decree appealed from should be and is hereby reversed and is remanded to the trial court with directions to enter decree in accord herewith, and by restoring of record the former order and decree closing the estate of John R. Bonnett, deceased, and approving the final report and petition for discharge of the administratrix, and entering further order and decree rejecting the filing of appellee's claim.—Reversed and remanded.

CHIEF JUSTICE and all JUSTICES concur.